[895 NYS2d 156]

Mark A. Grimaldi, Respondent, v Wayne D. Guinn, Appellant, et al., Defendants.

Second Department, February 9, 2010

**APPEARANCES OF COUNSEL**

*Christopher X. Maher, LLC*, Carmel, for appellant.

*Corbally, Gartland & Rappleyea, LLP*, Poughkeepsie (*Allan B. Rappleyea* of counsel), for respondent.

**OPINION OF THE COURT**

DICKERSON, J.

The plaintiff, who resides in Poughkeepsie, New York, is the owner of a 1969 Chevrolet Camaro (hereinafter the Camaro). On or about May 5, 2006 he purchased a vintage Chevrolet "cross-ram" manifold and carburetor assembly (hereinafter the cross-ram) from Rick's First Generation Camaro, located in Athens, Georgia. The cross-ram was shipped to the plaintiff in New York, along with documentation including a certification by the defendant Wayne D. Guinn of Guinn's Engineering, located in Three Bridges, New Jersey, to the effect that the cross-ram was authentic. In particular, the certification recited: "I certify that the information assigned to [the cross-ram] is precise and accurate . . . This report was . . . prepared expressly for Mark Grimaldi."

After receiving the cross-ram, the plaintiff decided to have it installed in the Camaro, and contacted Guinn concerning this project, explaining to Guinn that he "would like" him to "do the install." According to the plaintiff, Guinn expressed interest in being involved in the project.

## The Complaint

In his complaint, the plaintiff claimed that, beginning in the fall of 2005, he had a series of communications with Guinn about the Camaro and the work he wanted performed. The plaintiff alleged that he communicated with Guinn through numerous telephone calls, faxes, and e-mails, he viewed Guinn's Web site, and received a copy of Guinn's book, Camaro Untold Secrets 1967-1969, mailed to him in New York with a personal inscription to him, stating "[l]et[']s get together and do it the

right way." According to the complaint, Guinn represented on several occasions that he could install the cross-ram and rebuild the engine.

The plaintiff alleged that, in reliance on Guinn's promises concerning his ability to perform the work and the estimated cost of the project, he delivered the Camaro and the cross-ram to Guinn in September 2006 at the shop of the defendant Richard Pasqualone, also known as Rich Pasqualone, doing business as Cornerstone Automotive (hereinafter Cornerstone), in Pennsylvania. The plaintiff asserted that, once there, he learned that the defendant Allen Tischler, doing business as Tischler Competitive Engines (hereinafter Tischler), of New Jersey, would be involved in the project.

Upon delivery of the vehicle, Guinn and Pasqualone published information on their Web sites, stating that the plaintiff's Camaro had been delivered to them. This publication, according to the plaintiff, was disseminated as a "Guinn's Engineering 'News Break,' " the purpose of which was to solicit additional business for Guinn.

Some time after delivery of the Camaro and the cross-ram to Pasqualone, and after the plaintiff tendered partial payment, the defendants allegedly began to evade the plaintiff's telephone calls. According to the plaintiff, when they did actually speak to him, they were vague with regard to their progress, an estimated completion date, and the cost. The plaintiff alleged that he was provided with photographs of the progress in January 2007, which revealed that the Camaro was disassembled and not close to completion.

The plaintiff asserted that he attempted to contact the defendants between January and April 2007. According to the complaint, when the defendants did return the plaintiff's calls, they remained evasive and provided vague and unreliable information. The plaintiff alleged that, in April 2007, he received additional photographs. He asserted that while the photographs demonstrated some progress, they also demonstrated poor workmanship and that the vehicle was not close to completion.

As set forth in the complaint, by May 2007 the plaintiff had paid the sum of $32,000 to the defendants. The plaintiff asserted that the defendants had originally estimated the cost to be in the sum of $20,000 or less.

The plaintiff alleged that in May 2007 the defendants promised that the project would be completed by July 15, 2007,

but that it was not completed by that date. The plaintiff further alleged that Guinn promised to provide him with weekly status reports, but that no such reports were ever provided.

In his complaint, the plaintiff alleged that, in November 2007, more than one year after his delivery of the Camaro to Cornerstone, he recovered the Camaro, but that it and the cross-ram remained totally disassembled and not near completion.

The plaintiff claimed that, prior to his delivery of the Camaro to Cornerstone, it was worth approximately $100,000. He asserted that, after proper installation of the cross-ram, it would have been worth approximately $200,000. The plaintiff claimed that after the defendants disassembled the Camaro, and upon his recovery of the still-disassembled vehicle, it was of nominal value and may not be restorable to the condition it was in when delivered to Cornerstone.

In the first cause of action, the plaintiff alleged that the parties had reached an agreement, and that the defendants breached the agreement. The plaintiff claimed that, as a result of the defendants' breach, he sustained damages in an amount not less than $250,000.

In the second cause of action, the plaintiff alleged that the defendants engaged in deceptive and misleading business practices in violation of General Business Law § 349.

In the third cause of action, the plaintiff alleged that the defendants' representations that they would perform the work for the sum of $20,000 and complete it within three months were made to induce him to engage the defendants, and that he relied on these representations. However, according to the plaintiff, the defendants did not intend to honor their promises, their representations were false and known by the defendants to be false when made, and they were made to deceive him. The plaintiff further alleged that he was deceived by these representations, and, as a result of the defendants' fraudulent conduct, he sustained damages in an amount not less than $250,000.

In a purported fourth cause of action, the plaintiff sought to recover punitive damages.

## The Motion To Dismiss

After answering the complaint, Guinn and Tischler (hereinafter together the movants) moved pursuant to CPLR 3211 (a) (8) to dismiss the complaint insofar as asserted against them for

lack of personal jurisdiction. They asserted, inter alia, that they never solicited business in the State of New York, directly or indirectly.

Guinn stated, in an affidavit submitted in support of the motion, that the plaintiff initially solicited him by e-mail on October 14, 2005 requesting that Guinn authenticate a particular type of manifold/carburetor for a 1969 Camaro. Guinn believed that the plaintiff was referred to him by Rick's First Generation Camaro of Athens, Georgia, from which the plaintiff had purchased the part. Guinn stated that, prior to receiving that e-mail, he had never solicited any business from the plaintiff or anyone else in New York, directly or indirectly.

Guinn averred that the substance of the restoration work on the plaintiff's Camaro was to be performed by Cornerstone and Tischler. According to Tischler's affidavit, the plaintiff was referred to him by Rick's First Generation Camaro as well.

Guinn stated that his role was to provide documentation as to the restoration of the component parts of the plaintiff's engine. Guinn claimed that he was to consult, provide information, and certify, if appropriate, that the engine and its component parts were original equipment, and, if they were not, what parts of the engine were not original and what alteration work was performed.

Guinn and Tischler appended, to their affidavits, printouts of two e-mails apparently sent from the plaintiff to Guinn on Friday, October 14, 2005. In the first e-mail, sent at 7:04 P.M., the plaintiff stated, "I am buying a vintage cross-ram setup from Rick's First Generation. I would like you guys to authenticate it. How does the process work and how much does i[t] cost? Thank[s]. Mark." In the second e-mail, sent at 7:07 P.M., the plaintiff wrote, "Also, [¶] Do you guys install crossrams, cam, lifter etc.? If so, can you give me a ballpark cost. Thanks again. Mark."

Guinn claimed that he never provided goods or services to the plaintiff in New York, never traveled to New York, never maintained a telephone number, e-mail, or fax in New York, and never advertised in New York. Guinn stated that he met the plaintiff on two occasions, once on March 25, 2006, and once on September 23, 2006, both times at Cornerstone in Pennsylvania. Guinn claimed that, if any agreement existed between him and the plaintiff, it was strictly one created by e-mails emanating from his New Jersey office. Tischler similarly claimed that at no time did he contract with the plaintiff in New York, supply any

goods or services to the plaintiff in New York, or deliver anything to the plaintiff in New York.

### The Plaintiff's Opposition to the Motion

The plaintiff submitted his own affidavit in opposition to the defendants' motion, which repeated many of the allegations contained in the complaint. In addition, he specified that he was referred to Guinn by Kelley Timms at Rick's First Generation Camaro. He also noted that, when he originally received the cross-ram, it came with both a certificate of authenticity from Rick's First Generation Camaro, and an engineering report from Guinn's Engineering that was prepared for him, identifying his home address in Poughkeepsie, New York.

In his affidavit, the plaintiff averred that he first contacted Guinn by calling the telephone number posted on Guinn's Web site on or about Friday October 14, 2005. He stated that he also e-mailed Guinn. As related by the plaintiff in his affidavit, on or about Saturday October 15, 2005, Guinn telephoned him at his home in Poughkeepsie, and the two had a 30-minute conversation about the project, during which Guinn offered to install the cross-ram and rebuild the Camaro's engine. As the plaintiff explained it, on each occasion when he spoke with Guinn, the plaintiff was situated in New York State.

The plaintiff averred that, on October 28, 2005, his wife ordered from the Internet Guinn's book, Camaro Untold Secrets 1967-1969, as a gift for him after the plaintiff informed her of his conversations with Guinn and the services Guinn offered to perform. According to the plaintiff, Guinn shipped the book to the plaintiff's address in Poughkeepsie and wrote an inscription in the book, stating "[l]et[']s get together and do it the right way." The plaintiff recalled, in his affidavit, that on November 15, 2005, he received an e-mail from Guinn, in which Guinn stated, "[y]ou can have this work done at your place of preference or we can do it and make sure it is done right."

The plaintiff, in his affidavit, stated that after work commenced on the Camaro, in a telephone call in October 2006, Tischler informed him that an additional deposit in the sum of $3,000 would be required to continue the project. The plaintiff asserted that he mailed a check for this amount to Tischler's shop in New Jersey. The plaintiff further stated that he mailed an additional $2,000 check to Tischler in January 2007. As related by the plaintiff, Tischler called him in March 2007 and informed him that a balance of $7,205 was due. The plaintiff

recounted that, upon request, Tischler faxed an invoice to him, which set forth the plaintiff's address in Poughkeepsie. The plaintiff also stated that, in fall 2007, Tischler sent a DVD to him in Poughkeepsie, containing photographs and video of Tischler working on the vehicle to serve as documentation of the work being performed.

The plaintiff claimed that, between May 2007 and November 1, 2007, he received at least 12 telephone calls from Guinn and 15 telephone calls from Tischler regarding the status of the Camaro.

The plaintiff also noted, in his affidavit, that both Guinn and Tischler advertised on their Web sites, and on the eBay Web site, that they perform auto restoration services "in the Northeast."

## The Order Appealed From

In an order dated July 18, 2008, the Supreme Court, inter alia, denied that branch of Guinn's motion, made jointly with Tischler, which was pursuant to CPLR 3211 (a) (8) to dismiss the complaint insofar as asserted against him for lack of personal jurisdiction. The court observed that, pursuant to CPLR 302 (a) (1), any nondomiciliary who transacts any business within New York State or contracts anywhere to supply goods or services in the state is subject to the personal jurisdiction of the New York courts. The Supreme Court concluded that, in communicating with the plaintiff, performing work on the plaintiff's vehicle, having others perform work on the plaintiff's vehicle, accepting payment from the plaintiff for that work, and providing goods and services to the plaintiff in New York, the movants subjected themselves to the court's jurisdiction. We note that Guinn is the only appellant here, as Tischler did not file a notice of appeal from the Supreme Court's order.

## Discussion

"A party may move for judgment dismissing one or more causes of action asserted against him on the ground that . . . the court has not jurisdiction of the person of the defendant" (CPLR 3211 [a] [8]). Under New York's long-arm jurisdiction statute, a court may exercise jurisdiction over a nondomiciliary who, in person or through an agent, "transacts any business within the state or contracts anywhere to supply goods or services in the state" (CPLR 302 [a] [1]; *see Bogal v Finger*, 59 AD3d 653 [2009]).

## CPLR 302 (a)

"CPLR 302 (a) is a 'single act statute [and] . . . proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted' " (*Kimco Exch. Place Corp. v Thomas Benz, Inc.*, 34 AD3d 433, 434 [2006], quoting *Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 NY3d 65, 71 [2006], *cert denied* 549 US 1095 [2006]; *see Bogal v Finger*, 59 AD3d 653 [2009]).

"[T]he growth of national markets for commercial trade, as well as technological advances in communication, enable a party to transact enormous volumes of business within a state without physically entering it" (*Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 NY3d at 71). Therefore, " '[s]o long as a party avails itself of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend its actions there, due process is not offended if that party is subjected to jurisdiction even if not "present" in that State' " (*id.*, quoting *Kreutter v McFadden Oil Corp.*, 71 NY2d 460, 466 [1988]).

"Not all purposeful activity . . . constitutes a 'transaction of business' within the meaning of CPLR 302 (a) (1)" (*Fischbarg v Doucet*, 9 NY3d 375, 380 [2007]). For example, the Court of Appeals has held that

"merely telephon[ing] a single order to New York requesting a shipment of goods to another state, the transitory presence of a corporate official here, and communications and shipments sent here by an out-of-state doctor serving as a 'consultant' to plaintiff's New York physician do not support CPLR 302 (a) (1) jurisdiction" (*id.* at 380 [citations and internal quotation marks omitted]).

"Although it is impossible to precisely fix those acts that constitute a transaction of business, [the Court of Appeals'] precedents establish that it is the quality of the defendants' New York contacts that is the primary consideration" (*id.*). The purposeful creation of a continuing relationship has been a contributing factor in finding sufficient contacts to justify the exercise of long-arm jurisdiction (*id.* at 381; *George Reiner & Co. v Schwartz*, 41 NY2d 648, 653 [1977]). "Whether a non-domiciliary has engaged in sufficient purposeful activity to

confer jurisdiction in New York requires an examination of the totality of the circumstances" (*Farkas v Farkas*, 36 AD3d 852, 853 [2007]).

In *Kimco Exch. Place Corp. v Thomas Benz, Inc.* (34 AD3d at 433), the parties exchanged two executed exclusive marketing agreements by fax, whereby the plaintiff was to market nationally several of the defendants' properties which were not in New York. While the plaintiff was conducting its marketing campaign, the defendants made a few follow-up telephone calls (*id.* at 434). This Court determined, inter alia, that the "defendants' acts of faxing the executed contracts to New York and of making a few telephone calls do not qualify as purposeful acts constituting the transacting of business" (*id.*). This Court further held that these few contacts did not constitute purposeful availment of the New York forum, but rather merely constituted attempts to contact the plaintiff (*id.*).

### Quality of Contacts and Ongoing Relationships

In *Fischbarg v Doucet* (9 NY3d at 377), the defendants were located in California and the plaintiff attorney was located in New York. The Court of Appeals determined that, over the course of approximately nine months, the defendants, through numerous telephone calls, faxes, mail contacts, and e-mails, attempted to establish an attorney-client relationship with the plaintiff to represent them in an action in the State of Oregon (*id.* at 380). The Court of Appeals noted that it was the quality of the contacts with New York that was the primary consideration in determining whether a party transacted business within the meaning of New York's long-arm statute (*id.*). The Court of Appeals stated:

> "The quality of defendants' contacts here establishes a transaction of business in New York. Defendants sought out plaintiff in New York and established an ongoing attorney-client relationship with him. Plaintiff's time records and affidavit demonstrate that during the course of the representation, defendants communicated regularly with him in this state" (*id.* at 380-381).

The Court emphasized that a party's physical presence in New York was not necessary for that party to be subject to the jurisdiction of the New York courts (*id.* at 381-382). The Court characterized the transaction under consideration as a "sustained and substantial transaction of business in New York"

(*id.* at 382). The Court also stated that, in retaining a New York attorney, the defendants invoked the benefits and protections of New York law in connection with the attorney-client relationship (*id.*). The Court concluded that "[i]t is the nature and quality of these contacts, through which defendants established a substantial ongoing professional commitment between themselves and plaintiff, governed by the laws of our state, which support long-arm jurisdiction" (*id.* at 382-383).

In *Parke-Bernet Galleries v Franklyn* (26 NY2d 13, 17 [1970]), the defendant, in California, "although never actually present, was receiving and transmitting bids over an open telephone line and was an active participant in an auction held" in New York by the plaintiff. The defendant was also directly assisted by another, who was present in New York (*id.*). The Court of Appeals stated that the situation fell

> "between the situation where a defendant was physically present at the time the contract was made—the clearest sort of case in which our courts would have 302 jurisdiction—and the situation where a defendant merely telephones a single order from outside the State—a case in which our courts would not have such jurisdiction" (*id.* [citations omitted]).

The Court of Appeals determined that the defendant was subject to the jurisdiction of the New York courts in connection with an action arising out of the auction (*id.* at 17-18). The Court determined that participation in an auction over a live telephone line and bidding against prospective purchasers who were present in New York constituted more substantial contacts than the simple placement of a single telephone order (*id.* at 18). The Court also held that the defendant's participation in the auction, "which resulted in the paintings' [*sic*] being sold to him amounted to the sustained and substantial transaction of business here" (*id.*).

We now turn to consideration of the nature and quality of the contacts involved here.

### Personal Jurisdiction and the Internet

The plaintiff notes that both Guinn and Tischler advertised on their Web sites and on the Web site eBay that they perform auto restoration services "in the Northeast." Indeed, the plaintiff claims that he first contacted Guinn by calling the telephone number posted on Guinn's Web site on or about

Friday October 14, 2005. Additionally, on October 28, 2005 the plaintiff's wife ordered from the Internet Guinn's book as a gift for him. After the plaintiff delivered his vehicle to Guinn, delivery of the vehicle was reported on the Web site under the heading "Guinn's Engineering 'News Break,' " which recited "Highlights-9/23/2006 Mark Grimaldi-Brings in his 1969 Rally Sport Z/28 for a Guinn's Engineering 302-465 hp Cross Ram engine build." In addition, the Web site stated that " 'Cornerstone is the premier restoration shop in the northeast for Muscle Car restorations.' Wayne D. Guinn, Author *Camaro Untold Secrets.*' "

Guinn claims that the plaintiff mischaracterizes the nature and significance of the online content. According to Guinn, contrary to the plaintiff's contention, the plaintiff was referred to him by another individual, and the plaintiff was directed to his Web site only for the purpose of obtaining Guinn's contact information.

The extent to which an Internet Web site confers personal jurisdiction in the forum in which the consumer's computer is located has been addressed by several courts (*see generally In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,* 230 F Supp 2d 392 [2002]; *Brown v Grand Hotel Eden,* 214 F Supp 2d 335 [2002]; *Rodriguez v Circus Circus Casinos, Inc.,* 2001 WL 21244, 2001 US Dist LEXIS 61 [SD NY 2001]; *Citigroup Inc. v City Holding Co.,* 97 F Supp 2d 549 [2000]; *Vandermark v Jotomo Corp.,* 42 AD3d 931 [2007] [action remitted for immediate trial of issue of whether defendant's operation of a Web site is sufficient to confer personal jurisdiction]; *Kaloyeva v Apple Vacations,* 21 Misc 3d 840 [2008]; *Sayeedi v Walser,* 15 Misc 3d 621 [2007] [breach of contract action; single Internet sale of an automobile engine shipped to buyer in New York insufficient to confer personal jurisdiction]; *Boris v Bock Water Heaters,* 3 Misc 3d 835 [2004]; *Jones v Munroe,* 2 Misc 3d 24 [2003] [sale of automobile through eBay but delivered in Florida insufficient to confer personal jurisdiction]).

A useful jurisdictional analysis pertaining to online presence appears in *Zippo Mfg. Co. v Zippo Dot Com, Inc.* (952 F Supp 1119 [1997]), a trademark infringement action brought by the manufacturer of "Zippo" lighters against a computer news service using the Internet domain name of "zippo.com." The defendant was a California-based news service with an interactive Web site "through which it exchanges information with Pennsylvania residents in hopes of using that information for

commercial gain later" (*id.* at 1125) The defendant had entered into news-service contracts with 3,000 Pennsylvania residents and seven "contracts with Internet access providers to furnish services to their customers in Pennsylvania" (*id.* at 1126). Observing that it was the defendant's "conscious choice to conduct business" in Pennsylvania, the court asserted personal jurisdiction based upon the following analysis:

> "At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper . . . At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction . . . The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site" (*id.* at 1124).

If the foreign company maintains an informational Web site accessible to the general public but which cannot be used for purchasing services or goods, then most courts would find it unreasonable to assert personal jurisdiction over that company (*see generally American Homecare Fedn., Inc. v Paragon Scientific Corp.*, 27 F Supp 2d 109 [1998]; *Edberg v Neogen Corp.*, 17 F Supp 2d 104 [1998]; *Hearst Corp. v Goldberger,* 1997 WL 97097, 1997 US Dist LEXIS 2065 [SD NY 1997] [Web site with e-mail contact]; *Bensusan Rest. Corp. v King,* 937 F Supp 295, 301 [1996], *affd* 126 F3d 25 [1997] [Missouri nightclub's passive Web site]; *Boris v Bock Water Heaters,* 3 Misc 3d 835 [2004] [absence of direct solicitation of sales of product rendered Internet presence insufficient to confer personal jurisdiction on the record before the court]). For example, in *Weber v Jolly Hotels* (977 F Supp 327 [1997]), a New Jersey resident purchased a tour package offered by a Massachusetts travel agent, not an exclusive selling agent, which featured accommodations at a Si-

cilian hotel owned by an Italian corporation, Itajolly Compagnia Italiana Dei Jolly Hotels (hereinafter Jolly Hotels). Jolly Hotels conducted no business in New Jersey, but had a subsidiary which owned a hotel in New York City which could make reservations at all of its hotels. The plaintiff sustained injuries at the defendant's Sicilian hotel and commenced an action against Jolly Hotels in New Jersey. Jolly Hotels maintained a Web site accessible in New Jersey, which provided "photographs of hotel rooms, descriptions of hotel facilities, information about numbers of rooms and telephone numbers" (*id.* at 329). The Web site could not be used to make reservations at any of Jolly Hotels. Finding the Web site to be passive in nature, the court dismissed the complaint for a lack of personal jurisdiction, but transferred the case to the Unites States District Court for the Southern District of New York because the New York City hotel owned and operated by the defendant's subsidiary could make reservations at all Jolly Hotels.

However, passive Web sites, when combined with other business activity, may provide a reasonable basis for the assertion of personal jurisdiction (*see CompuServe, Inc. v Patterson,* 89 F3d 1257 [1996] [entering into a contract with a company in the forum state which contained a forum selection clause, plus multiple e-mail communications to the forum state, is sufficient to support personal jurisdiction]). In describing such a scenario, the court in *Citigroup, Inc. v City Holding Co.* (97 F Supp 2d 549, 565 [2000]) noted that the defendant's

> "[c]ustomers in New York may apply for loans on-line as well as print out an application form for transmission by facsimile, they may click once of a 'hyper link' to 'chat' on line with a City Lending representative and they may e-mail City Lending with home loan questions and receive a response from an 'online representative . . . in less than an hour.' "

This was held sufficient to support the court's exercise of personal jurisdiction over the defendant (*see also Hasbro Inc. v Clue Computing Inc.,* 994 F Supp 34, 38 [1997] [provision of trainers to a company doing business in the forum]; *Digital Equip. Corp. v AltaVista Tech., Inc.,* 960 F Supp 456 [1997] [entering into a licensing agreement with a company in the forum and selling to three residents in the forum]; *EDIAS Software Intl., L.L.C. v BASIS Intl. Ltd.,* 947 F Supp 413 [1996] [e-mail, fax, and telephone communications]; *American Eye-*

*wear, Inc. v Peeper's Sunglasses & Accessories, Inc.,* 106 F Supp 2d 895 [2000] [interactive Web site fostered exchange of information and communication with the defendant, and the defendant entered into contracts and transacted business]; *Resuscitation Tech., Inc. v Continental Health Care Corp.,* 1997 WL 148567, 1997 US Dist LEXIS 3523 [SD Ind 1997] [e-mail, fax, telephone, and regular mail communications]; *Gary Scott Intl., Inc. v Baroudi,* 981 F Supp 714 [1997] [12 sales in the forum and plans to sell more]; *compare Amazon Tours, Inc. v Wet-A-Line Tours LLC,* 2002 WL 230895, 2002 US Dist LEXIS 1649 [ND Tex 2002] [various support services incident to sales]; *TY Inc. v Clark,* 2000 WL 51816, 2000 US Dist LEXIS 383 [ND Ill 2000] [fielding e-mail questions about products and sending information about orders]; *People Solutions, Inc. v People Solutions, Inc.,* 2000 WL 1030619, *3, 2000 US Dist LEXIS 10444, *10 [ND Tex 2000] ["the web site contains several interactive pages which allow customers to take and score performance tests, download product demos, and order products online [and] provides a registration form whereby customers may obtain product brochures, test demonstration diskettes, or answers to questions"]).

If a Web site provides information, permits access to e-mail communication, describes the goods or services offered, downloads a printed order form, or allows online sales with the use of a credit card, and sales are, in fact, made (*see generally D.J.'s Rock Creek Mar., Inc. v Imperial Foam & Insulation Mfg. Co.,* 2002 US Dist LEXIS 13470 [D Kan 2002]; *Smith v Basin Park Hotel, Inc.,* 178 F Supp 2d 1225 [2001]; *Dagesse v Plant Hotel N.V.,* 113 F Supp 2d 211 [2000]; *Hurley v Cancun Playa Oasis Intl. Hotels,* 1999 WL 718556, 1999 US Dist LEXIS 13716 [ED Pa 1999]) in this manner in the forum state, particularly by the injured consumer (*see American Network, Inc. v Access America/Connect Atlanta, Inc.,* 975 F Supp 494 [1997]; *Zippo Mfg. Co. v Zippo Dot Com, Inc.,* 952 F Supp 1119 [1997]; *Kaloyeva v Apple Vacations,* 21 Misc 3d 840 [2008]), then the assertion of personal jurisdiction may be reasonable. This seems to be the trend for the sale of goods and services that are delivered after they are ordered by the consumer on his or her home computer.

Here, it is clear that Guinn's Web site was thoroughly passive in nature. Accordingly, we find that, contrary to the plaintiff's suggestion, Guinn's Web site alone would not provide a basis for the assertion of personal jurisdiction over him.

## Purposeful Creation Of Continuing Relationship

Notwithstanding the foregoing, based on the totality of the circumstances (*see Farkas v Farkas*, 36 AD3d at 853), in light of the number, nature, and timing of all of the contacts involved, including the numerous telephone, fax, e-mail, and other written communications with the plaintiff in New York that Guinn initiated subsequent to his initial involvement in the project, as well as the manner in which Guinn employed his decidedly passive Web site for commercial access, Guinn must be deemed to have sufficient contacts with this state. Despite the fact that Guinn was not physically present in New York, the exercise of jurisdiction over him by the courts of this state does not offend due process (*see Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 NY3d at 71; *Kreutter v McFadden Oil Corp.*, 71 NY2d at 466). Moreover, provided that Guinn's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted, the fact that he was never in New York and only one transaction is involved does not preclude a finding that Guinn was subject to the jurisdiction of the New York courts (*see Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 NY3d at 71; *Bogal v Finger*, 59 AD3d 653 [2009]; *Kimco Exch. Place Corp. v Thomas Benz, Inc.*, 34 AD3d at 434).

Here, at all relevant times, the plaintiff was situated in New York, with the exception of his delivery of the vehicle to and his retrieval of it from Pennsylvania. Guinn and Tischler were both situated in New Jersey and, on occasion, in Pennsylvania. Although the plaintiff originally contacted Guinn by e-mailing and placing telephone calls to Guinn on or about October 14, 2005, it is not necessarily who initiated contact that is determinative, but rather, the nature and quality of the contacts and the relationship established as a result (*see Fischbarg v Doucet*, 9 NY3d at 382-383), based on the totality of the circumstances (*see Farkas v Farkas*, 36 AD3d at 853).

It is clear that Guinn engaged in the "purposeful creation of a continuing relationship" with the plaintiff (*Fischbarg v Doucet*, 9 NY3d at 381; *see George Reiner & Co. v Schwartz*, 41 NY2d at 653). Following the plaintiff's initial attempt to contact Guinn, it appears that Guinn, by virtue of his telephone calls and e-mails to the plaintiff, and contrary to his contentions, affirmatively attempted to establish a relationship with the plaintiff whereby he would be involved in the project.

The relationship between the plaintiff and Guinn continued for more than a year, until the plaintiff, dissatisfied, retrieved

his vehicle in November 2007. By that time, the plaintiff claims that he had paid Guinn and Tischler the sum of more than $32,000, at least two installments of which were actively solicited by Tischler's calls to the plaintiff in New York and the facsimile transmission of an invoice. Numerous e-mail contacts between the plaintiff and Guinn appear in the record. As described above, the plaintiff claims that, between May 2007 and November 1, 2007, he received at least 12 telephone calls from Guinn and 15 calls from Tischler.

An examination of the pertinent facts in the record, set forth above, establishes that Guinn purposefully created a continuing relationship with the plaintiff centered on the project at issue (*see generally Fischbarg v Doucet*, 9 NY3d at 381; *see George Reiner & Co. v Schwartz*, 41 NY2d at 653). It is beyond dispute that there is a substantial relationship between the transaction at issue and the claims asserted by the plaintiff; all of the plaintiff's claims arise directly from the subject transaction (*see Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 NY3d at 71; *Bogal v Finger*, 59 AD3d 653 [2009]; *Kimco Exch. Place Corp. v Thomas Benz, Inc.*, 34 AD3d at 434). "[E]xercising jurisdiction over the [movants] in the circumstances presented here would not be inconsistent with traditional notions of due process, fair play, and substantial justice" (*Bogal v Finger*, 59 AD3d at 654-655; *see International Shoe Co. v Washington*, 326 US 310, 316 [1945]; *LaMarca v Pak-Mor Mfg. Co.*, 95 NY2d 210, 214-215 [2000]; *Opticare Acquisition Corp. v Castillo*, 25 AD3d 238, 247-248 [2005]).

## Conclusion

The Supreme Court correctly denied that branch of Guinn's motion, made jointly with Tischler, which was pursuant to CPLR 3211 (a) (8) to dismiss the complaint insofar as asserted against him. Accordingly, the order is affirmed insofar as appealed from.

Mastro, J.P., Dillon and Covello, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.