(dissenting). The principal questions presented on this appeal are whether the defendants’ contacts with New York established that the defendants purposefully availed themselves of the benefits of New York as the forum state, and whether it would offend notions of fair play and substantial justice for the courts of New York to assert long-arm jurisdiction over the defendants. The majority concludes that the evidence was insufficient to demonstrate that the defendants’ contacts with New York were sufficient to confer jurisdiction over them. I disagree, and, accordingly, I respectfully dissent.
According to the plaintiff, he first learned of the existence of the defendant Laser Spine Institute (hereinafter LSI) in May 2008. The plaintiff saw an advertisement for LSI on the website maintained by America Online (hereinafter AOL). Upon clicking on the advertisement, he viewed a five-minute video presentation in which a golf professional provided a testimonial concerning the two surgeries which had been performed on him by LSI over the course of three days, and highlighting the fact that he returned to compete on the Professional Golfers’ Association tour 10 days later.
*48 Motivated by the advertisement, the plaintiff contacted LSI “by telephone and internet” to gather information concerning the procedures performed by LSI, and for an evaluation of his personal medical condition. On May 29, 2008, the plaintiff requested one of his New York physicians, Dr. Vitto Dimatteo, to review the LSI website and offer his opinion about LSI. The plaintiff also requested that Dimatteo speak on the telephone with a physician at LSI to discuss the procedures proposed by LSI for the plaintiffs treatment.
Also on May 29, 2008, the plaintiff spoke on the telephone with Andrew Vaught, who identified himself as a “patient advocate” at LSI. Vaught acknowledged that he received the MRI films that the plaintiff sent to him.
On May 30, 2008, the plaintiff received two email messages from Vaught, with attachments. The attachments consisted of insurance forms and a letter setting forth the findings of an LSI physician following review of the plaintiffs MRI films. The physician’s review set forth the abnormalities found by the physician, as well as the surgical procedures recommended. Later that day, Vaught contacted the plaintiff via email and informed him that LSI had a cancellation, and that if the plaintiff was willing to travel to Tampa, Florida, on short notice, the plaintiff could undergo the proposed surgery on June 9, 2008, “at a significant discount.”
On June 2, 2008, the defendant completed the insurance form furnished by Vaught. The plaintiff also attempted to arrange payment for his surgical procedure. Vaught responded, via email, that the plaintiff could make the necessary arrangements concerning payment upon his arrival at LSI’s facility. Vaught also provided the plaintiff with a list of hotels in Tampa that extended a discount to LSI patients.
On June 3, 2008, the plaintiff received, via email, a registration form from Victoria Soroko, LSI’s scheduling assistant. The plaintiff sent an email message to Soroko, acknowledging receipt of the form, and posing several questions. Thereafter, the plaintiff spoke with an individual at LSI named Jeff, who indicated that the plaintiff must send his “blood work” to LSI. Later in the day, Soroko called the plaintiff again to answer the plaintiff’s questions. Among other matters discussed, the plaintiff recounted how he had learned of LSI through the Internet, and the plaintiff specifically discussed the video testimonial he had viewed online.
On June 3, 2008, the plaintiff attempted to schedule a telephone call between his New York physician, Dr. Dimatteo, *49 and Dr. Perry of LSI. However, Perry was not available. The next day, Dimatteo informed the plaintiff that a physician from LSI had contacted him and discussed with him the plaintiffs upcoming surgery.
Meanwhile, the plaintiff had his blood work completed at his family physician’s office in White Plains. The results were sent to LSI.
On June 6, 2008, or at some point soon thereafter, the plaintiff traveled from his home in New Rochelle to the LSI facility in Tampa. On June 9, 2008, the plaintiff underwent his first surgical procedure at LSI, performed by the defendant physician Kevin Scott. On June 12, 2008, the plaintiff underwent a second procedure at LSI, this one performed by the defendant physician Vernon Morris.
Between June 12, 2008, and June 26, 2008, the plaintiff, having returned to New York, telephoned the physicians at LSI on a daily basis. He informed the physicians that he was inconstant pain, and he requested pain medication. Prescriptions were provided by the physicians at LSI and filled at pharmacies in New Rochelle.
On July 14, 2008, the plaintiff was examined by Dr. Jack Stern in White Plains. Stern compared the plaintiffs presurgery MRI scans with his post-surgery MRI scans, and confirmed that certain disc herniations that were present prior to surgery were still present after surgery. The plaintiff, Stern, and representatives of LSI conducted a conference call, after which LSI’s representatives agreed to fly the plaintiff back to Tampa, at no cost to him, for a “revision surgery.”
Between July 2008 and August 3, 2008, the plaintiff communicated repeatedly via telephone and email with Cyndi Nation, head of patient advocacy/relations at LSI. The plaintiff insisted that LSI have its most experienced surgeon handle his care. Nation indicated that LSI’s most experienced surgeon was the defendant Craig Wolff, and that he would perform a “revision surgery.”
On August 6, 2008, Wolff performed surgery on the plaintiff. After the surgery, Wolff informed the plaintiff that he had “removed a bone chip on the nerve, left over from Dr. Scott’s first surgery.” Following this surgery, the plaintiff was in severe pain. He remained in his hotel room, in constant pain, until he departed Tampa for New York on August 9, 2008.
Between August 9, 2008, and October 31, 2008, the plaintiff communicated almost daily with Nation via text messages, *50 telephone calls, and email messages, conveying to Nation the symptoms he was experiencing. On August 18, 2008, the plaintiff received a telephone call fromWolff s assistant nurse, Sherri, concerning the pain that the plaintiff was experiencing. She advised the plaintiff to take his pain medication.
On August 26, 2008, in addition to the symptoms he had previously been experiencing, the defendant began suffering from severe headaches. The following day, the plaintiff telephoned Wolff and explained his circumstances. Wolff ordered a new MRI scan to be performed in Tarrytown. The MRI film revealed a collection of fluid surrounding the surgical area.
Stern and Dr. Bradley Cash, another of the plaintiffs New York physicians, consulted each other and determined that the fluid was possibly from a dura leak. Between August 27, 2008, and September 22, 2008, the plaintiff telephoned and exchanged text messages with LSI. Eventually, Wolff and Cash had a telephone conversation. Wolff reviewed the plaintiffs MRI films, and concluded that the plaintiff indeed had sustained a dura leak. Wolff directed the plaintiff to return to Tampa to undergo yet another procedure at LSI, this one to address the dura leak.
On August 29, 2008, the plaintiff spoke with Nation, who indicated that LSI would pay for the plaintiffs airfare to Tampa for the next procedure. However, Wolff warned the plaintiff that this additional procedure would involve more pain, and would delay the plaintiffs healing process. The plaintiff, who could not tolerate more pain, elected to wait and see if his pain subsided. After the plaintiff followed Wolffs advice that he lie flat for 24 to 48 hours, the pain indeed subsided to a limited extent.
On September 7, 2008, the plaintiff transmitted an email message to Trey Traveisa, LSI's president, and described his situation. Traveisa indicated that the LSI physicians were evaluating the plaintiffs case, and would follow up with him. On September 10, 2008, Traveisa contacted the plaintiff and stated that “nothing was wrong ” Traveisa suggested that the plaintiff call him on his cellular phone. On September 11, 2008, the plaintiff transmitted an email message and also telephoned Traveisa, notifying him that he had consulted with two physicians in New York who opined that the swelling in the plaintiffs neck was likely the result of pressure from a dura leak. Traveisa again suggested that the plaintiff call him on his cellular phone.
Between September 11, 2008, and December 2008, the plaintiff made numerous attempts to collect his medical records and additional information from. LSI. He transmitted email *51 messages to Traveisa and Nation, and requested follow-up calls with Wolff. The plaintiff also requested that LSI send his MRI films to him so he could have a New York physician review them. Additionally, the plaintiff requested that LSI fax him the reports concerning his case and fax their recommendations for additional surgery to Cash.
Following consultation with other physicians, the plaintiff ultimately underwent an additional surgery in New York on April 3, 2009.
In addition to the communications between the plaintiff and LSI in the form of telephone calls, email messages, facsimile transmissions, and online solicitation, the plaintiff claimed that LSI conducted seminars within New York State. Specifically, he claimed that LSI held one of these seminars on November 1, 2010.
“A party may move for judgment dismissing one or more causes of action asserted against him on the ground that . . . the court has not jurisdiction of the person of the defendant” (CPLR 3211 [a] [8]). “ ‘While the ultimate burden of proof rests with the party asserting jurisdiction . . . , the plaintiff [ ], in opposition to a motion to dismiss pursuant to CPLR 3211 (a) (8), need only make a prima facie showing that the defendant [s] w[ere] subject to the personal jurisdiction of the Supreme Court’ ” (Daniel B. Katz & Assoc. Corp. v Midland Rushmore, LLC, 90 AD3d 977, 978 [2011], quoting Cornely v Dynamic HVAC Supply, LLC, 44 AD3d 986, 986 [2007]).
CPLR 302 (a) (1) provides:
“(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
“1. transacts any business within the state or contracts anywhere to supply goods or services in the state” (CPLR 302 [a] [1]).
CPLR 302 (a) (1) “is a ‘single act statute [and] . . . proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant’s activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted’ ” (Kimco Exch. Place Corp. v Thomas Benz, Inc., 34 *52 AD3d 433, 434 [2006], quoting Deutsche Bank Sec., Inc. v Montana Bd. of Invs., 7 NY3d 65, 71 [2006], cert denied 549 US 1095 [2005]; see Kreutter v McFadden Oil Corp., 71 NY2d 460, 467 [1988]; Daniel B. Katz & Assoc. Corp. v Midland Rushmore, LLC, 90 AD3d at 979; Grimaldi v Guinn, 72 AD3d 37, 44 [2010]; Zottola v AGI Group, Inc., 63 AD3d 1052, 1054 [2009]; Wright v 299 Union Ave. Corp., 288 AD2d 382, 383 [2001]).
“ ‘[T]he growth of national markets for commercial trade, as well as technological advances in communication, enable a party to transact enormous volumes of business within a state without physically entering it’ ” (Grimaldi v Guinn, 72 AD3d at 44, quoting Deutsche Bank Sec., Inc. v Montana Bd. of Invs., 7 NY3d at 71). Therefore, “[s]o long as a party avails itself of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend its actions there, due process is not offended if that party is subjected to jurisdiction even if not ‘present’ in that State” (Grimaldi v Guinn, 72 AD3d at 44 [internal quotation marks omitted]; see Kreutter v McFadden Oil Corp., 71 NY2d at 466).
“Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws” (Daniel B. Katz & Assoc. Corp. v Midland Rushmore, LLC, 90 AD3d at 979 [internal quotation marks omitted]; see Fischbarg v Doucet, 9 NY3d 375, 380 [2007]; McKee Elec. Co. v Rauland-Borg Corp., 20 NY2d 377, 382 [1967]). “Not all purposeful activity, however, constitutes a ‘transaction of business’ within the meaning of CPLR 302 (a) (1)” (Fischbarg v Doucet, 9 NY3d at 380). Thus, the Court of Appeals has held
“that merely telephoning] a single order to New York requesting a shipment of goods to another state, the transitory presence of a corporate official here, and communications and shipments sent here by an out-of-state doctor serving as a consultant to plaintiffs New York physician do not support CPLR 302 (a) (1) jurisdiction” {id. [internal quotation marks and citations omitted]).
Further, the Court of Appeals has stated that, “ [although it is impossible to precisely fix those acts that constitute a transaction of business, our precedents establish that it is the quality of the defendants’ New York contacts that is the primary consideration” {id.). For example, in Fischbarg, in considering
*53 the nature of the contacts involved, and in concluding that the defendants were subject to New York’s long-arm jurisdiction, the Court of Appeals stated, “[i]t is the nature and quality of these contacts, through which defendants established a substantial ongoing professional commitment between themselves and plaintiff, governed by the laws of our state, which support long-arm jurisdiction” {id. at 382-383). It is noteworthy that “it is not necessarily who initiated contact that is determinative, but rather, the nature and quality of the contacts and the relationship established as a result (see Fischbarg v Doucet, 9 NY3d at 382-383), based on the totality of the circumstances” (Grimaldi v Guinn, 72 AD3d at 51; see Farkas v Farkas, 36 AD3d 852, 853 [2007]).
“The purposeful creation of a continuing relationship has been a contributing factor in finding sufficient contacts to justify the exercise of long-arm jurisdiction” (Grimaldi v Guinn, 72 AD3d at 44; see Fischbarg v Doucet, 9 NY3d at 381; George Reiner & Co. v Schwartz, 41 NY2d 648, 653 [1977]). “ ‘Whether a non-domiciliary has engaged in sufficient purposeful activity to confer jurisdiction in New York requires an examination of the totality of the circumstances’ ” (Grimaldi v Guinn, 72 AD3d at 44-45, quoting Farkas v Farkas, 36 AD3d at 853). Accordingly, a consideration of the nature and quality of LSI’s contacts with New York follows.
The plaintiff learned of LSI while navigating the Internet, after he clicked on an advertisement for LSI on AOL’s home page. LSI maintains its own website. LSI claims that its website is strictly passive in nature, solely providing information to the public. The defendants assert that services cannot be purchased through LSI’s website, and observe that the plaintiff here did not schedule his surgery through the website. Therefore, the defendants assert that LSI’s website cannot serve as a predicate for conferring jurisdiction over them.
As this Court stated in Grimaldi, “[t]he extent to which an Internet Web site confers personal jurisdiction in the forum in which the consumer’s computer is located has been addressed by several courts” (Grimaldi v Guinn, 72 AD3d at 47). “A useful jurisdictional analysis pertaining to online presence appears in Zippo Mfg. Co. v Zippo DotCom, Inc. (952 F Supp 1119 [1997])” (Grimaldi v Guinn, 72 AD3d at 47), in which Judge McLaughlin of the United States District Court for the Western District of Pennsylvania stated:
“At one end of the spectrum are situations where a *54 defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper ... At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction . . . The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site” (Zippo Mfg. Co. v Zippo Dot Com, Inc., 952 F Supp at 1124).
It should be acknowledged that, with regard to Internet websites and personal jurisdiction,
“a website’s interactivity may be useful for analyzing personal jurisdiction under [CPLR] 302 (a) (1), but only insofar as it helps to decide whether the defendant ‘transacts any business’ in New York— that is, whether the defendant, through the website, ‘purposefully avail[ed] himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws’ ” (Best Van Lines, Inc. v Walker, 490 F3d 239, 252 [2d Cir 2007], quoting CutCo Indus., Inc. v Naughton, 806 F2d 361, 365 [2d Cir 1986]).
It may be the case that LSI’s website is what Zippo would characterize as a “passive” website, or, in reality, it may occupy “the messier middle ground where personal jurisdiction depends on the level of interactivity and commercial nature of the exchange of information that occurs on the website” (Henderson v Laser Spine Inst., 815 F Supp 2d 353, 377 [D Me 2011] [internal quotation marks omitted]). The record in this case, however, contains only sparse evidence regarding the nature of LSI’s website. The plaintiff stated in an affidavit that he learned of LSI through an advertisement on AOL’s home page. As a result of observing this advertisement and viewing the testimonial, the plaintiff contacted LSI. There is also a printout in the *55 record of LSI seminar dates which was allegedly printed from LSI’s website. Otherwise, the record is devoid of evidence concerning the nature of LSI’s website from which to reach any conclusions concerning that website’s degree of interactivity. Therefore, on this record, there is no basis to conclude that LSI’s website could be characterized, under the Zippo continuum, as anything other than a “passive” website.
In addition to LSI’s website, the defendants’ contacts with the plaintiff in New York consisted in large part of numerous telephone calls, email messages, and facsimile transmissions exchanged over a period of time. The nature and extent of these contacts are set forth above, and will not be fully revisited here. However, in brief, the record establishes that LSI and the plaintiff exchanged numerous email messages over approximately six months in 2008. It is undisputed that the parties also had many telephone conversations over this period of time. LSI electronically sent the plaintiff a questionnaire to complete, which he did. On May 30, 2008, LSI contacted the plaintiff via email and informed him that LSI had a cancellation, and encouraged him to travel to Tampa, Florida, on short notice, to undergo the recommended surgical procedure. A physician from LSI consulted directly with one of the plaintiffs New York physicians. After a representative from LSI instructed the plaintiff to have his “blood work” performed, the plaintiff did so in White Plains, and had the results sent from New York to LSI in Florida. In June 2008, the plaintiff traveled to the LSI facility in Tampa, and, on June 9, 2008, the plaintiff underwent his first surgical procedure at that facility. On June 12, 2008, the plaintiff underwent a second procedure at that facility. Thereafter, between June 12, 2008, and June 26, 2008, the plaintiff, in New York, telephoned the physicians at LSI on a daily basis concerning his constant pain following the surgical procedures. The LSI physicians provided the plaintiff with prescriptions for medication, which were filled at pharmacies in New Rochelle. As the plaintiffs condition failed to improve, an LSI doctor had a telephone conversation with one of the plaintiffs New York physicians, after which LSI agreed to fly the plaintiff back to Tampa for a “revision surgery.” Between August 9, 2008, and October 31, 2008, following the plaintiffs third surgical procedure at the LSI facility on August 6, 2008, the plaintiff communicated almost daily with Nation via text messages, telephone calls, and email messages. At one point, Wolff ordered a new MRI to be performed on the plaintiff in Tarrytown. Between *56 August 27, 2008, and September 22, 2008, the plaintiff telephoned and exchanged text messages with LSI representatives, and, eventually, an LSI physician had another telephone conversation with one of the plaintiffs New York physicians. On August 28, 2008, Wolff again reviewed the plaintiffs MRI films, and concluded that the plaintiff indeed had a dura leak. Following a number of additional telephone and email exchanges between the plaintiff and the defendants, the plaintiff ultimately elected to undergo an additional surgical procedure in New York which was not performed by the defendants.
Based on the totality of the circumstances (see Farkas v Farkas, 36 AD3d at 853), in light of the number, nature, and timing of all of the contacts involved, including the numerous telephone, email, and text message communications with the plaintiff in New York, the consultations with the plaintiffs New York physicians, the filling of prescriptions in New York pharmacies, and the ordering of blood work and MRIs in New York, as well as LSI’s use of its website to solicit business from Internet users, LSI had sufficient contacts with New York to be subject to its long-arm jurisdiction. The contacts described above demonstrate the “ ‘purposeful creation of a continuing relationship’ ” with the plaintiff (Grimaldi v Guinn, 72 AD3d at 51, quoting Fischbarg v Doucet, 9 NY3d at 381; see George Reiner & Co. v Schwartz, 41 NY2d at 653; cf. Skrodzki v Marcello, 810 F Supp 2d 501 [ED NY 2011]). Indeed, these contacts were more extensive than those at issue in Grimaldi v Guinn, in which this Court concluded that, based on the deployment of a passive website, coupled with “the number, nature, and timing of all of the contacts involved, including the numerous telephone, fax, e-mail, and other written communications with the plaintiff in New York,” the defendant Guinn had sufficient contacts with New York State to confer jurisdiction over him (72 AD3d at 51).
LSI asserts that a number of the contacts are irrelevant, as they occurred following the plaintiffs treatments at LSI’s facility in Florida. However, first, a substantial number of these contacts occurred prior to the plaintiffs last treatment at LSI’s Florida facility on August 6, 2008. Second, under a minimum contacts analysis, there is no per se temporal limitation that prohibits the consideration of contacts during the time surrounding the claimed injury (see Harlow v Children’s Hosp., 432 F3d 50, 61 [1st Cir 2005]; Henderson v Laser Spine Inst., 815 F Supp 2d at 370).
Furthermore, there is a substantial relationship between the transaction at issue and the claims asserted by the plaintiff. *57 The plaintiffs three causes of action, sounding in medical malpractice, negligent hiring and supervision, and lack of informed consent, all arise directly from the transaction (see Deutsche Bank Sec., Inc. v Montana Bd. of Invs., 7 NY3d at 71; Bogal v Finger, 59 AD3d 653, 654 [2009]; Kimco Exch. Place Corp. v Thomas Benz, Inc., 34 AD3d at 434).
Although LSI cannot be deemed to have been physically present in New York, the exercise of jurisdiction over LSI, and, by extension, the physician defendants, does not offend due process. LSI purposefully availed itself of the benefits of the forum state by the manner in which it projected itself into New York. It had sufficient minimum contacts with New York as set forth fully above, and it could reasonably be expected to defend its actions here (see generally Deutsche Bank Sec., Inc. v Montana Bd. of Invs., 7 NY3d at 71; Kreutter v McFadden Oil Corp., 71 NY2d at 466). Accordingly, “ ‘[e]xercising jurisdiction over the [defendants] in the circumstances presented here would not be inconsistent with traditional notions of due process, fair play, and substantial justice’ ” (Grimaldi v Guinn, 72 AD3d at 52, quoting Bogal v Finger, 59 AD3d at 654-655; see International Shoe Co. v Washington, 326 US 310, 316 [1945]; LaMarca v Pak-Mor Mfg. Co., 95 NY2d 210, 214-215 [2000]; Opticare Acquisition Corp. v Castillo, 25 AD3d 238, 247-248 [2005]).
The defendants rely on, inter alia, O’Brien v Hackensack Univ. Med. Ctr. (305 AD2d 199 [2003]), in support of their contention that jurisdiction cannot be conferred over them here, and the majority is persuaded by the defendants’ argument in this regard. However, first, while this Court may accept the decisions of the other judicial departments of the Appellate Division as persuasive, we are free to reach a different result (see Mountain View Coach Lines v Storms, 102 AD2d 663, 665 [1984]; see e.g. Klee v Americas Best Bottling Co., Inc., 76 AD3d 544, 546 [2010]). Second, in considering the defendant’s contacts with New York, in O’Brien, the Appellate Division, First Department, relied, in part, on cases (see Cardone v Jiminy Peak, 245 AD2d 1002, 1003 [1997]; Chamberlain v Jiminy Peak, 176 AD2d 1109, 1110 [1991]) employing a more stringent “doing business” standard applicable under CPLR 301 (see Sills v Ronald Reagan Presidential Found., Inc., 2009 WL 1490852, *8 n 7, 2009 US Dist LEXIS 44774, *24-26 n 7 [SD NY, May 27, 2009, No. 09 Civ. 1188(GEL)]; see generally McGowan v Smith, 52 NY2d 268, 272-273 [1981]). Additionally, there was no Internet presence at issue in O’Brien. Finally, as previously stated, the *58 contacts at issue here are more substantial than those considered in this Court’s Grimaldi case, which resulted in the defendant Guinn being subject to jurisdiction in New York State (see Grimaldi v Guinn, 72 AD3d 37 [2010]).
Furthermore, a determination that jurisdiction may be conferred on the defendants here is in harmony with two recent Federal District Court decisions in which LSI was found to be subject to personal jurisdiction in states outside of Florida where it did not have any physical presence, and in which the contacts at issue were essentially the same as those at issue here (see Henderson v Laser Spine Inst., 815 F Supp 2d 353 [2011]; Bond v Laser Spine Inst., LLC, 2010 WL 3212480, 2010 US Dist LEXIS 82736 [ED Pa, Aug. 11, 2010, No. 101086]).
In Henderson, the totality of the contacts discussed included “(1) the traditional contacts of phone, email, and faxed solicitations to [the plaintiff]; (2) the nationwide advertising placed in traditional magazines and far flung in-flight catalogues; and (3) the semi-interactive website claiming to have helped ‘tens of thousands of people — from all 50 states’ ” (Henderson v Laser Spine Inst., 815 F Supp 2d at 377). The District Court determined that these contacts constituted LSI’s purposeful availment of the benefits of conducting business in the State of Maine (see id.). The court further determined that the exercise of personal jurisdiction comported with the traditional notions of fair play and substantial justice (see id. at 377-379; see generally International Shoe Co. v Washington, 326 US at 320), based on consideration of certain factors, including
“ ‘(1) the defendant’s burden of appearing, (2) the forum state’s interest in adjudicating the dispute, (3) the plaintiffs interest in obtaining convenient and effective relief, (4) the judicial system’s interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies’ ” (Henderson v Laser Spine Inst., 815 F Supp 2d at 378, quoting Harlow v Children’s Hosp., 432 F3d at 67).
Accordingly, the District Court, inter alia, denied that branch of LSI’s motion which was to dismiss the complaint for lack of personal jurisdiction (see Henderson v Laser Spine Inst., 815 F Supp 2d at 383). The District Court reached its determination notwithstanding LSI’s arguments, echoed here, that all relevant events occurred in Florida, and that “notions of fair play and *59 substantial justice” weighed against the exercise of personal jurisdiction over LSI (id. at 362 [internal quotation marks omitted]).
Similarly, in Bond, the United States District Court for the Eastern District of Pennsylvania concluded, inter alia, that the plaintiffs “offered sufficient jurisdictional facts to establish that jurisdiction pursuant to” Pennsylvania’s long-arm statute (see 42 Pa Cons Stat § 5322) was proper (Bond v Laser Spine Inst., LLC, 2010 WL 3212480, *11, 2010 US Dist LEXIS 82736, *31). The minimum contacts found sufficient in Bond included the following:
“LSI communicated directly with Mr. Bond while Mr. Bond was in Pennsylvania via Dr. Michael Perry, and encouraged Mr. Bond to travel to LSI’s facility in Tampa for surgery. LSI assisted Mr. Bond in making his travel plans to go to LSI in Tampa for surgery. Additionally, LSI staff spoke with Mr. Bond on the phone repeatedly after the surgery while he was in Pennsylvania, diagnosed his post-surgery pain as ‘part of the healing process,’ prescribed steroids for him and called in the prescription to his pharmacy, advised him to see a neurosurgeon at Bryn Mawr Hospital, and advised the Bryn Mawr Hospital emergency room technician to prescribe more steroids. Moreover, the LSI doctor who advised the Bryn Mawr Hospital emergency room technician, Dr. Vernon Morris, is advertised on the LSI website as ‘a senior member of the LSI surgical team’ and ‘lead[er of] the Pennsylvania LSI surgical team’ ” (Bond v Laser Spine Inst., LLC, 2010 WL 3212480, *9, 2010 US Dist LEXIS 82736, *26-27 [citations omitted]).
The District Court concluded that these minimum contacts established that LSI purposefully availed itself of the forum state, Pennsylvania (see 2010 WL 3212480,*9, 2010 US Dist LEXIS 82736, *27). Based on essentially the same factors considered in Henderson, the District Court in Bond determined that the exercise of jurisdiction over LSI comported with fair play and substantial justice (see 2010 WL 3212480, *10-11, 2010 US Dist LEXIS 82736, *29-31).
Of course, New York’s long-arm statute and case law differ from those of Maine and Pennsylvania. Nonetheless, it is worth noting that my conclusion here is in harmony with these recent *60 cases involving LSI. Moreover, these cases are illuminating as to the various ways in which LSI and similar corporations are, certainly in the lay sense, availing themselves of benefits of foreign jurisdictions in this era of “ ‘growth of national markets for commercial trade, as well as technological advances in communication’ ” (Grimaldi v Guinn, 72 AD3d at 44, quoting Deutsche Bank Sec., Inc. v Montana Bd. of Invs., 7 NY3d at 71).
As the majority observes, mere days after Bond was decided, the United States District Court for the District of New Jersey determined that it could not exercise personal jurisdiction over LSI (see Morilla v Laser Spine Inst., LLC, 2010 WL 3258312, *6, 2010 US Dist LEXIS 83608, *16-17 [D NJ, Aug. 16, 2010, Civ. No. 2:10-cv-01882 (WHW)]). However, in Morilla, the plaintiffs alleged that LSI had sufficient contacts with New Jersey based on its “website and internet advertisements” (2010 WL 3258312, *5, 2010 US Dist LEXIS 83608, *13). The District Court concluded, based on the record before it, that the plaintiffs “have neither proven that defendants’ website was commercially interactive under the Zippo scale, nor that there was ‘something more’ to show that defendants purposefully availed themselves of the laws of New Jersey” (id.). Specifically, the court stated that the plaintiffs provided it with “nothing more than unspecific allegations and a link to the current version of defendants’ website. That is not enough” (id.). The District Court’s decision was based almost entirely on LSI’s website, and the court noted that, unlike here, the “plaintiffs do not provide any specific details about the instances of communications between themselves and” LSI (2010 WL 3258312, *6, 2010 US Dist LEXIS 83608, *16). Morilla is clearly distinguishable from the instant case.
Based on the foregoing, it is my conclusion that LSI is subject to jurisdiction in New York pursuant to CPLR 302 (a) (1). Particularly in light of evolving business practices resulting from technological advances, the manner in which businesses employing such technologies are increasingly reaching outside of their traditional jurisdictions to acquire new business, and the degree to which these changes have an impact upon consumers, there were sufficient minimum contacts present to warrant the exercise of jurisdiction pursuant to CPLR 302 (a) (1). Furthermore, the exercise of jurisdiction here comports with due process.
Accordingly, I respectfully dissent. I would reverse the order insofar as appealed from, and deny that branch of the defend *61 ants’ motion which was to dismiss the complaint based on lack of personal jurisdiction under CPLR 302.
Dillon, J.E, and Angiolillo, J., concur with Sgroi, J.; Dickerson and Hall, JJ., dissent and vote to reverse the order insofar as appealed from and deny that branch of the defendants’ motion which was pursuant to CPLR 3211 (a) (8) to dismiss the complaint based on lack of personal jurisdiction under CPLR 302, in a separate opinion by Dickerson, J.
Ordered that the order is affirmed insofar as appealed from, with costs.