[42 NYS3d 188]

AMERICA/INTERNATIONAL 1994 VENTURE et al., Appellants, v BRUCE MAU, Respondent.

Second Department, November 23, 2016

**APPEARANCES OF COUNSEL**

*Becker & Poliakoff, LLP*, New York City (*James J. Mahon* and *Oliver Edwards* of counsel), for appellants.

*Satterlee Stephens Burke & Burke LLP*, New York City (*Richard Saldinger*, of the Illinois bar, admitted pro hac vice, and *Mario Aieta* of counsel), for respondent.

**OPINION OF THE COURT**

AUSTIN, J.

The question presented on this appeal is whether New York has jurisdiction over an Illinois resident who entered into an agreement to invest in a New York joint venture. As relevant to this appeal, the agreement appointed a corporation that has its principal office in New York to act as an agent on behalf of all of the investors with respect to the business of the joint venture. For the reasons set forth herein, we find that the agreement, which gave investors no right to control the activities of the corporation appointed as agent, cannot serve as a basis for the exercise of long-arm jurisdiction. Accordingly, the Supreme Court properly granted the nondomiciliary defendant's motion to dismiss the complaint on the ground of lack of personal jurisdiction.

I.

A. Factual Background

The plaintiff American/International 1994 Venture (hereinafter AIV) is a joint venture organized under the laws of the State of New York to engage in oil and gas drilling. The defendant, Bruce Mau, a resident of Glenview, Illinois, alleges that in late 1994, his accountants approached him about an opportunity to invest in the joint venture. After a series of meet-

ings and discussions with his accountants, all of which took place in Illinois, the defendant decided to make the investment. On December 17, 1994, the defendant executed closing documents memorializing his purchase of four units in AIV. To secure his purchase of the units, on that date the defendant also executed a promissory note made payable to AIV, in the amount of $315,000. The note was scheduled to become payable in 15 years, on December 31, 2009. It is undisputed that the closing documents and note were all executed in Illinois and delivered to the defendant's accountants at their Illinois office.

The closing documents executed by the defendant in Illinois on December 17, 1994, included a power of attorney, pursuant to which the defendant agreed to appoint Kraft Oil Management, Inc., as his "attorney-in-fact" for various business purposes related to the joint venture. Kraft is a Delaware corporation that maintains its principal office in Great Neck, New York.

The terms relating to investment in the joint venture, and Kraft's role in it, were set forth in the "Subscription Agreement of [AIV]" entered into by the investors and Kraft. In article one of the Subscription Agreement, which pertained to "Defined Terms," the term "Agent" was defined as "Kraft Oil Management, Inc., or such other person or entity appointed by the Investors pursuant hereto as attorney-in-fact for the Investors to carry out the purpose of this Agreement." "Manager," a term used to identify Kraft, meant "Agent" as defined in the Subscription Agreement. The term "Working Interest" was defined, in part, as

> "the exclusive right to exploit the oil and gas located below the surface of a tract of land covered by an oil or gas lease. . . . Each Investor as a result of his ownership of a working interest will only be personally liable for his pro-rata share of any liability incurred by [AIV]."

Article 3, subsection 1, of the Subscription Agreement provided, in pertinent part, that each investor "shall receive an operating interest in an undivided fractional Working Interest or other rights that the Manager may contract for in such wells to be selected by the Manager."

Article four of the Subscription Agreement, which pertained to "Management and Appointment of Attorney-in-Fact," defined the relationship between the defendant and Kraft as follows:

"4.1 General Each Investor shall have equal rights in the management of [AIV's] business subject to the appointment of [Kraft] as Agent and Attorney-in-Fact.

"4.2 Appointment of Agent and Attorney-in-Fact

"A. The parties hereto by the execution of this Agreement hereby appoint and authorize Kraft . . . and its partners, to act as agent and attorney-in-fact for each of the parties hereto . . . with full power and authority in his name . . . as may be necessary or appropriate to carry out the provisions or purposes of this Agreement, including but not limited to the following:

"To manage actively and conduct the business of [AIV] through completion or abandonment of the wells, as the case may be, devoting such time and talents to such management as shall from time to time be deemed necessary by the Manager. The Manager shall have, without the further consent of the Investors, except as set forth below, the power to do any and all things necessary or incident to the management and conduct of the business of [AIV]."

Section 4.2 (A) then enumerated the various business activities that Kraft was authorized to conduct on behalf of the investors, which included acquiring, exploring, developing, managing and operating oil, gas or other mineral properties; selecting drill sites and arranging for the drilling of wells; entering into operating, drilling, and construction agreements; and retaining geologists, engineers, and other consultants and employees.

The power of individual investors to revoke Kraft's appointment as agent and attorney-in-fact was restricted by section 4.2 (B), which provided:

"B. The appointment by all Investors of the Agent as attorney-in-fact shall be deemed to be a power coupled with an interest, in recognition of the fact that each of the Investors under this Agreement will be relying upon the power of the Agent to act as contemplated by this Agreement and the Memorandum in any filing and other action by it on behalf of the Investors, and shall survive the incapacity of any Investor or any part of the inter-

est of such Investor. . . . This power of attorney shall be binding on the parties hereto, their heirs and assigns, until written notice of revocation is received by a majority of the Investors."

Article six pertained to the "Fiduciary Responsibility of the Manager." This article provided that

"[i]n order to expedite the handling of [AIV] Business, it is understood and agreed that any document executed by the Manager, while acting in the name and on behalf of [AIV], shall be deemed to be the action of the Investors as to any third parties (including the Investors as third parties for such purpose)."

The Subscription Agreement also contained a "Governing Law" provision, which stated: "This Agreement shall be construed in accordance with and governed in all respects by the laws of the State of New York applicable to an agreement executed in and performed entirely within said state." However, the Subscription Agreement contained no choice of forum provision.

Shortly after the defendant executed the note and closing documents, AIV assigned the note to the plaintiff Springfield Petroleum Corporation (hereinafter Springfield and together with AIV, the plaintiffs) by agreement dated December 31, 1994. In exchange for the assignment, Springfield provided credit to AIV. Springfield is a Delaware corporation authorized to do business in New York and maintains its principal place of business in Great Neck.

The plaintiffs allege that the defendant failed to pay the note when it came due on December 31, 2009.

## B. Allegations of the Complaint

More than four years later, by summons and complaint dated June 24, 2014, the plaintiffs commenced this action against the defendant to recover on the promissory note. The summons and complaint were filed in the Supreme Court, Nassau County. According to the summons, venue was based on CPLR 503.*

The plaintiffs alleged in their complaint that in 1994, AIV "organized a tax-advantaged oil and gas drilling joint venture,"

---

* CPLR 503 (a) provides, in part, that "the place of trial shall be in the county in which one of the parties resided when it was commenced." A foreign corporation authorized to do business in New York, such as Springfield, is a resident of the county in which its principal place of business is located (*see*

which was "a leveraged investment to engage in oil and gas exploration efforts." The opportunity to invest in the joint venture was offered "only to investors who had wealth, experience, high income and need for tax deductions." These tax deductions were made possible "by the investor's promissory note payable to AIV that provided the investor with a large initial tax deduction, while payments of interest and principal were deferred by the terms of the promissory note for a number of years." The plaintiffs then alleged that the defendant, an Illinois resident, was an investor in the joint venture and personally executed and delivered to AIV a promissory note in the sum of $315,600. As a basis for exercising personal jurisdiction over the defendant, the plaintiffs asserted that, as an investor, he "became a working interest owner in the Joint Venture, and as such began doing business in the State of New York."

The plaintiffs additionally alleged in their complaint that the joint venture hired Springfield as the driller, and that Springfield in turn retained Berkshire Coal Corporation, located in New York, to provide geophysical services. The plaintiffs also noted that "[p]ursuant to the terms of the Joint Venture, the program manager of the Joint Venture acted as the agent of the investors including the Defendant."

Finally, the plaintiffs alleged that the defendant had defaulted under the terms of the note by failing and refusing to make payment when the note became due on December 31, 2009.

## C. The Defendant's Motion to Dismiss Pursuant to CPLR 3211 (a) (8)

The defendant moved pursuant to CPLR 3211 (a) (8) to dismiss the complaint for lack of personal jurisdiction.

In support of his motion, the defendant argued that the court could not exercise long-arm jurisdiction over him because he had not transacted any business within the state that would satisfy the requirements of CPLR 302. In support of his position, he contended that the execution of a promissory note made payable in New York and governed by New York law was insufficient to support jurisdiction under CPLR 302 where, as here, a nondomiciliary has no other contacts with New York.

CPLR 503 [c]). For an unincorporated association such as AIV, its president or treasurer bringing an action on its behalf "shall be deemed a resident of any county in which the association has its principal office, as well as the county in which he [or she] actually resides" (CPLR 503 [d]).

He pointed out that all of his activities with respect to his investment in the joint venture took place in Illinois.

The defendant disputed the allegation in the complaint that by investing in the joint venture, he became a "working interest owner . . . and as such began doing business in the State of New York." In this regard, he submitted that to the extent that the plaintiffs were using the word "working" to imply that he was involved in the operations, activities, or management of the joint venture, this was not the case. The defendant further maintained that the fact that the "[p]laintiffs apparently appointed the program manager of the Joint Venture to act as [his] agent" was irrelevant, because jurisdiction over a nonresident could not be predicated upon "the unilateral activity of another party or a third person" (internal quotation marks omitted).

Finally, the defendant argued that even if there was a basis for jurisdiction under CPLR 302, the exercise of jurisdiction would not comport with due process because he could not have reasonably expected to be subject to litigation in New York based on his investment in the joint venture.

To substantiate his position that he did not conduct business in New York, the defendant submitted his own affidavit, in which he averred that he was domiciled in Glenview, Illinois, and had lived in that state from 1994 through December 31, 2009. The defendant explained that in late 1994, his accountants approached him about the opportunity to invest in a joint venture organized to engage in oil and gas exploration efforts. The accountants' principal place of business was in Niles, Illinois, and all of the defendant's meetings and discussions with them about a potential investment in the joint venture took place in Illinois. The defendant further averred that he "did not communicate with, or travel to New York to physically meet with, any representative of Plaintiffs or the Joint Venture regarding [his] potential investment in the Joint Venture." Rather, he decided to invest solely as a result of his meetings and discussions with his accountants in Illinois.

The defendant further alleged that following his investment, he was "not employed by or involved with any aspect of the operations or management of the Joint Venture." Moreover, he never traveled to New York for any business purpose related to the joint venture, and his only communications with the joint venture's representatives consisted of "[a]pproximately one telephone call" and "[o]ne letter sent by [him] on December 15,

48

1997." The defendant concluded by alleging that from 1994 through the date of his affidavit, he had not "[m]aintained an office, post office address, telephone number or listing, bank account, agent or other physical presence in New York," "[o]wned or leased property, real or otherwise, in New York," or "[c]onducted any business in New York."

In opposition, the plaintiffs argued that the defendant had subjected himself to jurisdiction by executing the power of attorney and Subscription Agreement appointing Kraft as his agent. In this regard, they maintained that "[b]y appointing an agent to do business on his behalf in New York State and agreeing that his purchase of an operating interest in a New York joint venture would be governed by New York law, [the defendant] deliberately subjected himself to the jurisdiction of the New York courts." They asserted that the defendant engaged in purposeful business activities through his agent Kraft, since Kraft, which had its principal place of business in Great Neck, conducted business on the defendant's behalf in New York. The plaintiffs added that the "very close nexus between the promissory note at issue and the appointment of Kraft and Kraft's purposeful activities on behalf of [the defendant] more than fulfill[ed] the second element required to assert personal jurisdiction under CPLR 302 (a) (1)," namely, that the claim arose from in-state business activities or transactions.

Moreover, the plaintiffs contended that invoking personal jurisdiction over the defendant would not violate due process since the defendant, as a sophisticated investor, entered into a long-term business arrangement with the joint venture, personally appointed Kraft as his agent to conduct business in New York, and agreed to be bound by New York law. Under these circumstances, the plaintiffs maintained that it was foreseeable that the defendant would be subject to the jurisdiction of New York courts. They added that subjecting the defendant to jurisdiction in New York would not conflict with fair play and substantial justice since the defendant took advantage of substantial oil- and gas-related tax breaks.

To support their position, the plaintiffs submitted the affidavit of Carl Valeri, the president of Kraft. Valeri maintained that by executing the closing documents to effectuate his participation in the joint venture, the defendant "appointed Kraft . . . as his attorney-in-fact for a number of business purposes, including but not limited to the execution of business orders, the execution of drilling and operating agreements, and

the collection and distribution of monies." He then averred that in accordance with that appointment, Kraft, which has its place of business in Great Neck, New York, "did execute business orders, execute drilling and operating agreements, and collect and distribute monies on [the defendant's] behalf in New York State."

In reply, the defendant argued that although the plaintiffs "vaguely allege[d] that Kraft 'executed business orders and drilling and operating agreements, and collected and distributed monies on [his] behalf in New York,'" they did not allege that he "was a party to these agreements; . . . had knowledge of or consented to any specific transactions or orders; or . . . received any monies whatsoever." He submitted that absent such allegations, the plaintiffs failed to demonstrate that an actual agency relationship existed between him and Kraft. The defendant additionally stressed that the plaintiffs had not submitted any evidence that he controlled Kraft. To the contrary, he asserted that Kraft was an affiliate of the plaintiffs and was controlled by Valeri, "an insider of Plaintiffs." The defendant also submitted that under the terms of the Subscription Agreement, Kraft retained "sole and virtually unfettered authority to make all business decisions relating to the Joint Venture." Indeed, the Subscription Agreement "d[id] not contain a single provision allowing an individual investor, like [himself], to control any aspect of Kraft's day-to-day operations."

The defendant additionally pointed out that the Subscription Agreement did not provide him the right to terminate his alleged agency relationship with Kraft and provided that only a majority of investors could terminate Kraft. Given Kraft's unfettered authority and his inability to remove Kraft as an "agent" as set forth in the Subscription Agreement, the defendant submitted that the "realities of the relationship" between the two belied the existence of an agency relationship. Accordingly, the defendant maintained that Kraft's contacts with New York could not be imputed to him.

The defendant further argued that there was no articulable nexus between the cause of action for breach of a promissory note and the appointment of Kraft as his alleged agent. In this regard, he pointed out that Kraft was not the promisee of the note or its holder; Kraft had no role in the negotiation, execution, or delivery of the note; and the Subscription Agreement did not give Kraft any duties in connection with the note. Since

the cause of action could have been brought regardless of whether he ever granted a power of attorney to Kraft, the defendant asserted that there could be no basis for the exercise of personal jurisdiction under CPLR 302.

D. The Order of the Supreme Court

In an order dated March 17, 2015, the Supreme Court granted the defendant's motion to dismiss the complaint for lack of personal jurisdiction (2015 NY Slip Op 32618[U] [Sup Ct, Nassau County 2015]). The court found that the defendant established that he did not have minimum contacts with New York sufficient to subject him to personal jurisdiction.

The Supreme Court rejected the plaintiffs' contention that the defendant had engaged in purposeful business activities in New York through the actions of Kraft, finding that the plaintiffs failed to show that an agency relationship existed between the defendant and Kraft sufficient to establish jurisdiction. The court reasoned that

> "[a]lthough the complaint asserts that 'the program manager of the Joint Venture acted as the agent' of the Defendant, there are no allegations, nor any supporting evidentiary facts, establishing that Defendant had control over Kraft . . . . In this regard, the court notes that the Subscription Agreement does not authorize or empower the Defendant to control Kraft with respect to the Joint Venture. To the contrary, the Subscription Agreement states that Kraft shall have the 'full power and authority' to act on behalf of the Defendant 'without the further consent' of the Defendant and may 'do any and all things necessary' to conduct the business of the venture 'without limitation of any power or authority' to act when and if Kraft 'deems [it] necessary, appropriate or advisable'. The Subscription Agreement recites that Kraft, as 'agent', has the full power to act" (2015 NY Slip Op 32618[U], *5-6).

The Supreme Court also found that the defendant's "limited right to terminate his relationship with Kraft" further undermined the existence of an agency relationship that would subject the defendant to jurisdiction in New York based on Kraft's actions (*id.* at *6). In this regard, the court pointed out that the Subscription Agreement provided that only a majority of the investors could revoke the power of attorney granted to

Kraft. The court also noted that the Subscription Agreement indicated that the power of attorney given to Kraft was a "power coupled with an interest," one in which the agent had an interest in the subject matter underlying the power (*id.*). The court stated that "[a] power coupled with an interest is generally irrevocable, which, as applicable to the facts at bar, does not permit the Defendant to revoke his appointment of Kraft as attorney in fact" (*id.*). The court additionally found that the choice of law provision in the Subscription Agreement was insufficient, by itself, to serve as a predicate for jurisdiction.

## II.

Upon a CPLR 3211 (a) (8) motion to dismiss for lack of personal jurisdiction, it is the plaintiff who bears the " 'ultimate burden of proof' " to establish a basis for such jurisdiction (*Daniel B. Katz & Assoc. Corp. v Midland Rushmore, LLC*, 90 AD3d 977, 978 [2011], quoting *Cornely v Dynamic HVAC Supply, LLC*, 44 AD3d 986, 986 [2007]). However, to successfully oppose such a motion, the plaintiff need only make a prima facie showing that the defendant was subject to the personal jurisdiction of the court (*see Jacobs v 201 Stephenson Corp.*, 138 AD3d 693, 693-694 [2016]; *Whitcraft v Runyon*, 123 AD3d 811, 812 [2014]; *Daniel B. Katz & Assoc. Corp. v Midland Rushmore, LLC*, 90 AD3d at 978; *Cornely v Dynamic HVAC Supply, LLC*, 44 AD3d at 986).

New York's long-arm statute, CPLR 302, states, in pertinent part:

> "(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
>
> "1. transacts any business within the state or contracts anywhere to supply goods or services in the state."

"To determine whether a non-domiciliary may be sued in New York, we first determine whether our long-arm statute (CPLR 302) confers jurisdiction over it in light of its contacts with this State" (*LaMarca v Pak-Mor Mfg. Co.*, 95 NY2d 210, 214 [2000]). "If the defendant's relationship with New York falls within the terms of CPLR 302, we determine whether the exercise of jurisdiction comports with due process" (*id.* at 214).

CPLR 302 (a) is a "single act statute" (*Kreutter v McFadden Oil Corp.*, 71 NY2d 460, 467 [1988]; *see Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 NY3d 65, 71 [2006]). "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted" (*Kreutter v McFadden Oil Corp.*, 71 NY2d at 467; *see Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 NY3d at 71; *Jacobs v 201 Stephenson Corp.*, 138 AD3d at 694; *Daniel B. Katz & Assoc. Corp. v Midland Rushmore, LLC*, 90 AD3d at 979; *Grimaldi v Guinn*, 72 AD3d 37, 44 [2010]; *Kimco Exch. Place Corp. v Thomas Benz, Inc.*, 34 AD3d 433, 434 [2006]). "Purposeful activities are those with which a defendant, through volitional acts, 'avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws' " (*Fischbarg v Doucet*, 9 NY3d 375, 380 [2007], quoting *McKee Elec. Co. v Rauland-Borg Corp.*, 20 NY2d 377, 382 [1967]).

A. Transacts Any Business within the State

In determining the meaning of the "transacting business" phrase, the courts have stated that a defendant transacts business when it "purposefully avails" itself of the benefits and privileges of conducting business in New York. It is not the number of contacts that is determinative of whether a defendant purposefully availed itself of the benefits and privileges of conducting business in New York, but rather "the quality of the contacts" (*Paterno v Laser Spine Inst.*, 24 NY3d 370, 378 [2014]). Thus, "although determining what facts constitute 'purposeful availment' is an objective inquiry, it always requires a court to closely examine the defendant's contacts for their *quality*" (*Licci v Lebanese Can. Bank, SAL*, 20 NY3d 327, 338 [2012] [emphasis added]; *see Fischbarg v Doucet*, 9 NY3d at 380).

"Whether a non-domiciliary has engaged in sufficient purposeful activity to confer jurisdiction in New York requires an examination of the totality of the circumstances" (*Farkas v Farkas*, 36 AD3d 852, 853 [2007]). Cases in which the totality of the circumstances did not support the exercise of long-arm jurisdiction include *Etra v Matta* (61 NY2d 455, 458-459 [1984] [totality of a Massachusetts doctor's contacts with New York, in the form of written and telephonic communications and the shipment of experimental drugs to the decedent's New York

physician, were insufficient to confer personal jurisdiction]), *Rothschild, Unterberg, Towbin v McTamney* (59 NY2d 651, 652 [1983] [out-of-state investor's telephone calls to a New York stockbroker concerning a single stock transaction were insufficient to confer personal jurisdiction]), *Shalik v Coleman* (111 AD3d 816, 818 [2013] [South Carolina resident was not subject to jurisdiction in an action to recover on a promissory note where the only connections with New York were that the note provided that it would be governed in accordance with the laws of New York, communications were made between the South Carolina resident and the plaintiff via telephone and email, and payments on the note were mailed to the plaintiff's office in New York]), and *J. E. T. Adv. Assoc. v Lawn King* (84 AD2d 744, 744-745 [1981] [insufficient contacts by a New Jersey corporation that invested in a franchise through a contract that was negotiated by telephone or mail, even though the nonresident corporation maintained a New York telephone number that utilized a remote forwarding system to its New Jersey office]).

1. Acting in Person

As we have noted, New York courts may exercise personal jurisdiction over an out-of-state resident who personally transacts business within the state, regardless of whether that person has actually entered New York State (*see Paradigm Mktg. Consortium, Inc. v Yale New Haven Hosp., Inc.*, 124 AD3d 736, 737 [2015]). "Telephone calls and written communications . . . generally are held not to provide a sufficient basis for personal jurisdiction under the long-arm statute [unless they are] shown to have been used by the defendant to actively participate in business transactions in New York" (*Liberatore v Calvino*, 293 AD2d 217, 220 [2002] [internal quotation marks omitted]; *see Grimaldi v Guinn*, 72 AD3d at 44; *Executive Life Ltd. v Silverman*, 68 AD3d 715, 717 [2009]; *Kimco Exch. Place Corp. v Thomas Benz, Inc.*, 34 AD3d at 434).

▮ Here, the defendant did not personally transact business in New York, and the complaint does not contain any allegations that he did so (*see Pursnani v Stylish Move Sportswear, Inc.*, 92 AD3d 663, 663-664 [2012]). After the defendant executed the Subscription Agreement and the note in Illinois, the only acts connecting him to New York with respect to his investment in AIV were sending one letter in December 1997 to representatives of AIV and engaging in a telephone conversation with representatives of AIV (*see Shalik v Coleman*, 111

AD3d at 818; *Kimco Exch. Place Corp. v Thomas Benz, Inc.*, 34 AD3d at 434). Moreover, no meetings were held in New York between the defendant and the plaintiffs (*see J. E. T. Adv. Assoc. v Lawn King*, 84 AD2d at 745). Even though CPLR 302 (a) is a single-act statute, contrary to the plaintiffs' contention, the defendant's act of appointing Kraft, a corporation that maintains its principal office in New York, as his attorney-in-fact upon investing in the joint venture is not sufficient to invoke jurisdiction.

According to the defendant's affidavit, he did not actively participate in the operation of the joint venture, a fact which the plaintiffs did not contest in Valeri's affidavit. Although the plaintiffs made a conclusory allegation in their complaint that the defendant was a "working interest owner in the Joint Venture, and as such began doing business in the State of New York," it is undisputed that the defendant's only personal contacts with New York consisted of sending one letter and making one phone call to the representatives of the joint venture. Looking at the quality of the defendant's personal contacts with New York, it cannot be found that the defendant purposefully availed himself of the privilege of conducting business within the state.

## 2. Acting through an Agent

To be considered an agent for jurisdictional purposes, the local agent must have "engaged in purposeful activities in [the] State in relation to [a] transaction for the benefit of and with the knowledge and consent of the [defendant] and [the defendant must have] exercised some control over [the agent] in the matter" (*Kreutter v McFadden Oil Corp.*, 71 NY2d at 467; *see Parke-Bernet Galleries v Franklyn*, 26 NY2d 13, 18-19 [1970]; *East N.Y. Sav. Bank v Republic Realty Mtge. Corp.*, 61 AD2d 1001, 1002 [1978]; *see also CutCo Indus., Inc. v Naughton*, 806 F2d 361, 366 [2d Cir 1986]; *Grove Press, Inc. v Angleton*, 649 F2d 121, 122 [2d Cir 1981]). "The activities of a representative of a nondomicilliary in New York may be attributed to it . . . if it requested the performance of those activities and the activities benefit it" (*Barbarotto Intl. Sales Corp. v Tullar*, 188 AD2d 503, 504 [1992] [internal quotation marks omitted]; *see Kreutter v McFadden Oil Corp.*, 71 NY2d at 467; *Parke-Bernet Galleries v Franklyn*, 26 NY2d at 18-19; *see also CutCo Indus., Inc. v Naughton*, 806 F2d at 366; *Grove Press, Inc. v Angleton*, 649 F2d at 122). "The critical factor is the degree of control the defendant principal exercises over the agent" (*Barbarotto Intl.*

*Sales Corp. v Tullar*, 188 AD2d at 504 [activities of sales representatives could be attributed to the nondomiciliary defendant for purpose of conferring jurisdiction where the defendant requested the sales representatives to solicit sales of its equipment by virtue of an agency agreement, the sales representatives did in fact solicit such business in New York, and the defendant exercised control over the sales representatives by retaining the right to accept or reject any sales of equipment]; *see J. E. T. Adv. Assoc. v Lawn King*, 84 AD2d at 745 [the defendant's control over the supply specifications of its New York franchisees did not warrant a finding that the franchisees were its agents]).

■ Here, the critical element of control is completely lacking. The plaintiffs did not allege, and Valeri did not assert, that the defendant, in fact, exercised any control over Kraft. Indeed, it is undisputed that after making his investment, the defendant had no involvement in any aspect of the operation or management of the joint venture. Accepting the plaintiffs' assertions that Kraft executed business orders and drilling and operating agreements and collected and distributed monies on the defendant's behalf in New York State, and that knowledge of and consent to Kraft's actions were established by the Subscription Agreement, which appointed Kraft as his attorney-in-fact with regard to these transactions, the defendant's lack of control undermines a finding of an agency relationship.

Further, the Subscription Agreement, upon which the plaintiffs rely to establish the defendant's knowledge of and consent to Kraft's actions, curtailed the critical factor of control by its very terms. Examination of the provisions of the Subscription Agreement does not support the conclusion that the nexus of the defendant's relationship with Kraft was one of principal-agent. The relationship between Kraft and the defendant arose from the standard form Subscription Agreement that was executed by the defendant in order for him to invest in AIV. The Subscription Agreement did not grant the defendant the authority to control Kraft. To the contrary, the Subscription Agreement provided that Kraft had the "full power and authority," "without . . . further consent . . . [and] without limitation of any power or authority," to act on the defendant's behalf with regard to the operation of the joint venture. Moreover, while a principal is ordinarily "always free to terminate the agency relationship" (*G.K. Alan Assoc., Inc. v Lazzari*, 44 AD3d 95, 102 [2007]), here, the Subscription Agree-

ment did not provide the defendant the right to terminate Kraft as his agent and provided that only a majority of the investors could revoke Kraft's power of attorney.

In addition, the defendant's right to revoke Kraft's appointment was curtailed by the fact that both the power of attorney and the Subscription Agreement specifically provided that Kraft held a "power coupled with an interest." "A power of attorney that is coupled with an interest or which has been given in exchange for valuable consideration is irrevocable" (*Frankel v J.P. Morgan Chase & Co.*, 76 AD3d 664, 668 [2010]; *see Terwilliger v Ontario, Carbondale & Scranton R.R. Co.*, 149 NY 86, 92 [1896]). The irrevocable nature of the appointment further undermines the plaintiffs' argument that Kraft acted as the defendant's agent.

Furthermore, Kraft did not engage in any purposeful activities in New York in relation to the note upon which the plaintiffs seek recovery. It did not negotiate the note, was not the holder of the note, and did not have any duties with regard to the note. It is also undisputed that the defendant is an Illinois resident with no New York contacts, business or otherwise, other than his investment in the joint venture. The simultaneous appointment of Kraft as his attorney-in-fact through the execution of the Subscription Agreement to perform tasks in furtherance of the joint venture is wholly unrelated to the collection on the note executed by the defendant.

Given these circumstances, Kraft cannot be considered the defendant's agent for the purpose of establishing long-arm jurisdiction with respect to this action. Accordingly, Kraft's actions within this state cannot serve as a basis upon which a New York court could impose jurisdiction over the defendant.

Contrary to the plaintiffs' contention, the case at bar is not "nearly identical" to the situation presented in *Barclays Am./ Bus. Credit v Boulware* (151 AD2d 330 [1989]). In *Barclays*, the defendant's agent, on behalf of the limited partnership in which the defendant had purchased an interest secured by a promissory note, entered into a general loan and security agreement with the plaintiff (*see id.* at 330-331). The note, which had been executed by the defendant, was pledged as collateral security for the loan entered into between the defendant's agent and the plaintiff. The loan agreement contained a forum selection clause conferring jurisdiction on the courts of New York (*see id.* at 331). The agent had an office in New York (*see id.*).

When the defendant defaulted in making payments under the note, an action was commenced by the plaintiff in New York. The First Department found that jurisdiction in New York was proper since the defendant availed himself of the protection of the laws of this state by appointing an agent to act on his behalf in New York for the purpose of entering into financing agreements for the limited partnership (*see id.*).

Here, Kraft did not enter into an agreement with the plaintiffs on the defendant's behalf, as his agent, on which the defendant then defaulted. Thus, the case at bar is factually distinguishable from *Barclays*. The subject cause of action does not arise from the supposed agent's actions performed on behalf of the defendant in New York. Rather, the subject action arises out of the note, to which Kraft was a stranger, securing the payment of the defendant's interest in the joint venture. The Subscription Agreement, which memorialized the defendant's investment, was executed by the defendant, as one of the investors, and Kraft, not by Kraft on behalf of the defendant. The defendant's alleged default relates to his own actions and not to any actions which Kraft may have performed on his behalf (*cf. Paradigm Mktg. Consortium, Inc. v Yale New Haven Hosp., Inc.*, 124 AD3d at 737).

The plaintiffs' reliance on *Parke-Bernet Galleries v Franklyn* (26 NY2d 13 [1970]) is similarly misplaced. In *Parke-Bernet*, the defendant, a California domiciliary, expressed his desire to participate in an auction being conducted at the plaintiff's New York gallery (*see id.* at 15). During the auction, the defendant made bids on paintings over the phone through one of the plaintiff's employees, who relayed the bids to the auctioneer (*see id.*). When the defendant failed to pay for the paintings on which he was the highest bidder, the plaintiff sued the defendant in New York (*see id.* at 16). The Court of Appeals found that there was jurisdiction over the defendant since he "was receiving and transmitting bids over an open telephone line and was an active participant in an auction held here. Moreover, he was directly assisted in this activity by [the plaintiff's employee], who was physically present" (*id.* at 17).

In contrast, here, the defendant was not directly involved with any of the activities Kraft supposedly performed as his agent in New York. The action against the defendant in *Parke-Bernet* differs from the case at bar in that it arose from the defendant's failure to pay the plaintiff in accordance with the bids made by the defendant's agent at the defendant's behest during the auction held in New York.

Accordingly, based on the totality of circumstances, it cannot be concluded that the defendant engaged in sufficient purposeful activity or otherwise availed himself of any of the benefits of New York law so as to warrant the exercise of personal jurisdiction over him in New York under CPLR 302 (a) (1) (*see Farkas v Farkas*, 36 AD3d at 853).

B. Articulable Nexus between the Activity in New York and the Cause of Action

The fact that there is no connection between the plaintiffs' cause of action to recover on the note and Kraft's business activities further supports a determination that the defendant is not subject to jurisdiction in New York. "Essential to the maintenance of a suit against a nondomicilliary under CPLR 302 (subd [a], par 1) is the existence of some articulable nexus between the business transacted and the cause of action sued upon" (*McGowan v Smith*, 52 NY2d 268, 272 [1981]). "[A] 'substantial relationship' must be established between a defendant's transactions in New York and a plaintiff's cause of action" (*Johnson v Ward*, 4 NY3d 516, 519 [2005], quoting *Kreutter v McFadden Oil Corp.*, 71 NY2d at 467; *see Opticare Acquisition Corp. v Castillo*, 25 AD3d 238, 246 [2005]).

Here, even if Kraft were considered to be the defendant's agent for jurisdictional purposes, the plaintiffs presented no evidence that the alleged business activities in New York, conducted by Kraft on behalf of all investors including the defendant, were substantially related to or gave rise to the cause of action to recover on the note (*see Storch v Vigneau*, 162 AD2d 241, 242 [1990]). Kraft's business activities in New York were related to the operation of the joint venture. The subject cause of action arose from the defendant's failure to pay the note when it came due. The subject claim resulted from the execution of the note in Illinois 20 years prior to the commencement of this action. This relationship is too remote and indirect to create an articulable nexus.

Furthermore, the defendant's appointment of Kraft as his agent in New York does not bear a substantial relationship to the subject matter of this action. "These are . . . 'merely coincidental' occurrences that have a tangential relationship to the present case" (*Fischbarg v Doucet*, 9 NY3d at 384, quoting *Johnson v Ward*, 4 NY3d at 520). The defendant's appointment of Kraft as his agent and Kraft's alleged actions in New York do not form the basis of this action. The plaintiffs' claim based on the defendant's failure to pay the note is completely

independent of Kraft's activities pursuant to the terms of the Subscription Agreement.

To the extent that the plaintiffs argue that jurisdiction over the defendant is proper based on the fact that Kraft was a co-venturer, this argument, raised for the first time on appeal, is not properly before this Court (*see generally Viera v WFJ Realty Corp.*, 140 AD3d 737 [2016]).

## C. Choice of Law Provision in the Subscription Agreement

■ A choice of law provision in an agreement, while relevant, is insufficient by itself to confer personal jurisdiction over a defendant in New York under CPLR 302 (a) (1) (*see Shalik v Coleman*, 111 AD3d at 818; *Executive Life Ltd. v Silverman*, 68 AD3d at 717; *Peter Lisec Glastechnische Industrie GmbH v Lenhardt Maschinenbau GmbH*, 173 AD2d 70, 72 [1991]). Thus, the mere fact that the Subscription Agreement provided that its terms would be construed in accordance with the laws of New York does not mean that this action to recover on the note should be venued in New York (*see Shalik v Coleman*, 111 AD3d at 818; *Executive Life Ltd. v Silverman*, 68 AD3d at 717).

## D. Due Process

In light of our determination that CPLR 302 (a) (1) does not authorize jurisdiction over the defendant, we need not address the issue of whether the exercise of jurisdiction over the defendant in this matter would comport with the Due Process Clause of the Fourteenth Amendment to the United States Constitution (*see LaMarca v Pak-Mor Mfg. Co.*, 95 NY2d at 217-218).

For the foregoing reasons, there is no basis to impose New York's long-arm jurisdiction over the defendant. Accordingly, the Supreme Court properly granted the defendant's motion pursuant to CPLR 3211 (a) (8) to dismiss the complaint for lack of personal jurisdiction, and the order is affirmed.

LEVENTHAL, J.P., HALL and BARROS, JJ., concur.

Ordered that the order is affirmed, with costs.