# IN THE COURT OF APPEALS OF IOWA

No. 20-0766
Filed July 21, 2021

**A.Y. MCDONALD INDUSTRIES, INC.,**
    Plaintiff-Appellee,

**vs.**

**MICHAEL B. MCDONALD,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Michael J. Shubatt, Judge.

Michael McDonald appeals the ruling in favor of A.Y. McDonald Industries, Inc. and the denial of his counterclaims in a breach of contract case. **AFFIRMED IN PART AND REVERSED IN PART.**

Susan M. Hess of Hammer Law Firm, PLC, Dubuque, for appellant.

Brian J. Kane, Todd L. Stevenson, and Nicholas J. Kane of Kane, Norby & Reddick, P.C., Dubuque, for appellee.

Considered by Mullins, P.J., and May and Greer, JJ.

**GREER, Judge.**

All the shareholders of A.Y. McDonald Industries, Inc. (A.Y.) want is the unpaid money that Michael McDonald (Michael) acknowledged he inappropriately took when the parties negotiated a restitution agreement in 2012. After several attempts by Michael to avoid the debt, this collection dispute lands in our court. Michael challenges the ruling of the district court upholding A.Y.'s claims and rejecting his two counterclaims. Given the complexities of this contractual relationship and the legal course of the dispute, we start with a description of the intricate history.

**I. The Contractual Relationship and the Legal Proceedings.**

Beginning in 1983 as an employee, Michael started his rise through the family companies, and by 2012, he served as president and chief executive officer (CEO) of A.Y.'s subsidiary, A.Y. Manufacturing, and as senior vice president of A.Y. He participated as a board member for A.Y. and for all the subsidiaries. Although Michael portrays the findings as "being ambushed by the company," an investigation into the private payroll led to a discovery that Michael misappropriated significant company funds while acting as the manager of payroll for executive compensation. Because of the misappropriation of company funds, Michael's employment was terminated in May 2012. Likewise, he was removed from his officer roles and required to resign from all board positions within A.Y. and its subsidiaries. After negotiations over the recoupment of the missing sums occurred in 2012, Michael signed a restitution agreement (Agreement) and promissory note in which he agreed to repay A.Y. $2,538,500. The Agreement required Michael to liquidate certain assets to satisfy the agreed upon amount

owed, including the balance of his 401(k) plan. As a further protection, the Agreement required Michael to sign a statement confessing judgment in favor of the company, to be filed in the event of a default. Michael defaulted on the Agreement in 2013 after failing to pay A.Y. the funds he withdrew from his 401(k). As allowed by its terms and because of the default, A.Y. filed the confession judgment in the amount of $1,325,174.89, plus interest. That judgment remains unsatisfied.

With the judgment in hand, A.Y. began collection. But with few assets left, Michael wanted to end A.Y.'s collection activities. One of his remaining assets was his beneficial interest in two trusts, the J. Bruce McDonald Trust and the Delos L. McDonald Trust. The parties agree that both trusts contain spendthrift provisions. So, in 2014, the parties negotiated and then executed an amendment to the Agreement (Amendment). Under the Amendment, Michael signed a limited power of attorney (LPOA) authorizing an appointed third-party attorney-in-fact to receive and then forward payments from spendthrift trust trustees to A.Y. In exchange for the trust payments, A.Y. agreed to cease all collection activities, including future collection activities not yet initiated. Payments from the two trusts under this Amendment commenced in October 2014. But in September 2016, Michael received a payment from one of the spendthrift trusts when his appointed attorney-in-fact inadvertently sent him a check. He did not return the money or notify A.Y. at the time. After A.Y. discovered Michael received and retained the trust payment, Michael signed an acknowledgment providing

> The parties below acknowledge and agree that A.Y. . . . shall withhold payment in the amount of $6,218.44 from the expected income tax reimbursement payment it will make to Michael . . . in

2017 (or thereafter) in order for [A.Y.] to recoup the September 2016 dividend payment of the same amount made by U.S. Bank in its capacity as trustee of the J. Bruce McDonald Trust, *such amount having been improperly received by [Michael] in violation of his Restitution Agreement (and First Amendment thereto)* with [A.Y.].

(Emphasis added.) Because no trust payments were made since March 2017,[1] no income tax reimbursement payments have been calculated by A.Y. Thus the $6218.44 remains unpaid.

The cessation of trust payments coincided with Michael's April filing for Chapter 7 bankruptcy protection, which resulted in an automatic stay of all collection activities. In response, A.Y. filed a motion for relief from stay as to the trust distributions and an adversary complaint against Michael seeking a determination that Michael's debt was not dischargeable. Shortly after, on May 31, 2017, Michael sent a revocation of power of attorney to A.Y. That action prompted A.Y.'s filing of a second adversary complaint in the bankruptcy court seeking an injunction immediately reinstating or otherwise continuing Michael's LPOA and for declaratory relief deeming the LPOA irrevocable. Michael counterclaimed alleging the Amendment violated Iowa Code section 633A.2302(2) (2017).

Arguing that the material facts were undisputed, A.Y. moved for summary judgment, asking that its debt not be discharged. The bankruptcy court granted partial summary judgment for A.Y., holding that Michael's debt was non-dischargeable in bankruptcy because it was the result of his fraud while acting in

---

[1] Under the terms of the Amendment, until payments ceased, A.Y. received a total of $167,134.21 from the quarterly trust income payments. No other payments have been received by A.Y. since March 2017.

a fiduciary capacity, embezzlement, or larceny. Along with its request involving debt status, A.Y. included in the summary judgment motion a request for injunctive and declaratory relief. On those issues, the bankruptcy court denied A.Y.'s summary judgment motion. The bankruptcy court reasoned that "[t]o find the [LPOA] irrevocable here would turn a freely given appointment of an attorney-in-fact into a virtual assignment of [Michael's] interest in a spendthrift trust. Such an assignment of interest here would violate [section] 633A.2302(2)." *In re McDonald*, 586 B.R. 32, 41 (Bankr. N.D. Iowa 2018). On the subject of the injunction, the bankruptcy court noted because the bankruptcy stay and the revocation of the LPOA occurred at the same time, A.Y. "lost no collection opportunities." *Id.* Thus, the court reasoned A.Y.'s remedy required no injunction because after the stay lifted, the company could proceed with collection.

A.Y. appealed the bankruptcy court's ruling, and in October 2018, the bankruptcy appellate panel vacated the lower court's judgment as to A.Y.'s claim for injunctive and declaratory relief and remanded with instructions to dismiss the same. *In re McDonald*, 590 B.R. 506, 510 (B.A.P. 8th Cir. 2018). The appellate panel found "the contract claims for injunctive and declaratory relief were neither core proceedings nor non-core related to proceedings. Thus the Bankruptcy Court lacked jurisdiction to hear A.Y.'s claim for injunctive and declaratory relief." *Id.*

In November 2018, the bankruptcy court lifted the stay in Michael's bankruptcy proceeding as to A.Y. Once the stay lifted, A.Y. filed a petition and request for injunctive and declaratory relief in the Iowa district court. A.Y. asserted Michael breached their agreements when he revoked the LPOA. To further protect its interests, A.Y. also sought injunctive relief to restore and enforce the LPOA,

prevent Michael from attempting to revoke the LPOA in the future, and resume collection of funds from the spendthrift trusts. Finally, A.Y. asked the district court to declare the LPOA to be irrevocable. Along with denying A.Y.'s claims, Michael counterclaimed for breach of contract and interference with his expectancy interest as a beneficiary of two spendthrift trusts. Under his contract claim, Michael asserted A.Y. breached the Amendment by accepting two separate payments in 2016 to release its judgment lien from real estate Michael was selling. The two properties Michael owned were encumbered by mortgages held by Dubuque Bank & Trust (DB&T). A.Y. acknowledges it accepted two $5000 payments from DB&T in exchange for releasing the liens as a courtesy to the bank.[2] A.Y. credited the payments towards Michael's debt under the Agreement. Michael admitted at trial he did not raise any concerns at the time A.Y. collected the payments.[3]

After a bench trial, the district court granted A.Y.'s claim for breach of contract and awarded attorney fees to A.Y. pursuant to the terms of the Amendment. The district court further ordered a permanent injunction requiring Michael to comply with the Agreement, including the LPOA created by the Amendment, and declared the signed LPOA irrevocable. Finally, the court denied

---

[2] DB&T's counsel approached A.Y.'s President and chief financial officer, a board member of both A.Y. and DB&T, about lifting the liens.

[3] During the first bankruptcy case, Michael claimed A.Y. solicited payments from DB&T. The bankruptcy court dismissed this claim on summary judgment, stating:

> [A.Y.] does not dispute that it received payments from [DB&T], but denies soliciting these payments. [Michael] has not provided any evidence to support his argument that [A.Y.] solicited these payments. In the absence of evidence to the contrary, the Court finds that this is not a genuine dispute of material fact.

*McDonald*, 586 B.R. at 39.

and dismissed Michael's counterclaims with prejudice. Michael timely appealed the district court's ruling.

## II. Standard of Review and Error Preservation.

The parties agree Michael preserved error on all the issues raised in this appeal.[4] Likewise, they concede the district court tried this case at law rather than in equity based on the existence of the breach-of-contract claims. Thus, we review for correction of errors at law. *See* Iowa R. App. P. 6.907; *State ex rel. Dobbs v. Burche*, 729 N.W.2d 431, 435 (Iowa 2007) ("If an injunction is obtained as an independent remedy in an equitable action, review is de novo; however, if an injunction is obtained as an auxiliary remedy in an action at law, review is for correction of errors at law."). "The district court's findings of fact are binding on the court if they are supported by substantial evidence. We view the evidence in the light most favorable to the judgment when a party argues the trial court's ruling is not supported by substantial evidence." *Meincke v. Nw. Bank & Tr. Co.*, 756 N.W.2d 223, 227 (Iowa 2008) (citations omitted).

## III. Analysis.

With a focus on the district court rulings involving A.Y.'s claims against him and the counterclaims he asserted, Michael appeals. Michael claims the court erred in (1) finding he, rather than A.Y., breached the agreements; (2) ruling the LPOA was irrevocable; (3) finding A.Y. did not interfere with his expectancy interest

---

[4] We note a statement that error is preserved by filing an appeal is not an accurate statement. *See, e.g.*, *Brockman v. Ruby*, No. 18-0170, 2018 WL 6338632, at *3 (Iowa Ct. App. Dec. 5, 2018) (explaining the filing of a notice of appeal has nothing to do with error preservation and ruling error was not preserved though neither party contested the issue).

under the trusts; (4) issuing the permanent injunction; and (5) awarding A.Y. attorney fees. A.Y. resists these claims and raises the affirmative defense of issue preclusion against Michael's breach-of-contract issues.

**The LPOA and the Spendthrift Limitations.**

An answer to the core issue involved here initiates a domino effect in the resolution of the other concerns. The core issue is whether Michael could revoke his LPOA at any time and, depending on how that question is answered, can A.Y. still collect the trust distributions under the Amendment without violating the spendthrift trust protections under Iowa law? As they say, it's complicated.

At the onset, all parties agree that the trusts involved here contain spendthrift provisions. Iowa recognizes the enforceability of spendthrift provisions in trust agreements and the power of a donor to place conditions on the disbursement of trust funds. *See In re Est. of Bucklin*, 51 N.W.2d 412, 414 (Iowa 1952) (defining a valid spendthrift trust as one where the beneficiary is entitled to the income and "his interest shall not be transferable by him and shall not be subject to the claim of his creditors" (citation omitted)). As to the restraints on the spendthrift trust beneficiary, Iowa Code section 633A.2302(2) states:

> A beneficiary shall not transfer, assign, or encumber an interest in a trust in violation of a valid spendthrift provision, and a creditor or assignee of the beneficiary of a spendthrift trust shall not reach the interest of the beneficiary or a distribution by the trustee before its receipt by the beneficiary.

When Michael and A.Y. presented similar issues related to the spendthrift provisions to the bankruptcy court, it answered some of these questions. First, the bankruptcy court confirmed Michael could transfer his trust payments through an

attorney-in-fact to pay A.Y.  Before the bankruptcy appeal panel vacated part of

the decision, the bankruptcy court initially found:

> In this case, when the trust distributions were made to the attorney-in-fact, then transferred to [A.Y.], that property constructively passed through [Michael's] hands.  By freely executing a [power of attorney] and appointing an attorney-in-fact, [Michael] did not "transfer, assign, or encumber [his] interest in a trust in violation of a valid spendthrift provision."  Therefore, neither [Michael] nor [A.Y.] violated Iowa Code [section] 633A.2302(2) by signing the Amendment to Restitution Agreement.  Since [A.Y.] did not violate Iowa Code [section] 633A.2302(2), the Court need not consider if damages are available.  [Michael's] counterclaim is dismissed.

586 B.R. at 40 (citation omitted).  We agree with this finding, but we are not bound

by it.[5]  Michael's counterclaim involving a breach of expectancy interest was

denied because under contract law, once Michael received his trust payment—

---

[5] A.Y. raised the doctrine of issue preclusion as to this bankruptcy finding.  *See Comes v. Microsoft Corp.*, 709 N.W.2d 114, 117 (Iowa 2006) (preventing parties from re-litigating issues previously resolved in prior litigation).  For issue preclusion to apply, four prerequisites must be established:

> (1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Clark v. State*, 955 N.W.2d 459, 465–66 (Iowa 2021) (citation omitted) (footnote omitted).  Because the contract claims between A.Y. and Michael had no impact on the core proceeding decided in bankruptcy and those findings were vacated as a matter of law, issue preclusion is not available to A.Y.  The elements of issue preclusion are not met even though "the issue [was] raised and litigated in the prior action."  *Hunter v. Des Moines*, 300 N.W.2d 121, 125–26 (Iowa 1981).  The third and fourth conditions necessary to invoke issue preclusion are not established.  Because the issues raised under the declaratory relief and injunction rubric were not valid core proceedings, the issues were not "material and relevant to the disposition" of the bankruptcy court.  *See id.* at 126*; see also McDonald*, 590 B.R. at 509 ("A.Y.'s claim for injunctive and declaratory relief is not a core proceeding. It does not 'arise under' title 11 as it does not 'involve a cause of action created or determined by a statutory provision of title 11.'" (citation omitted)).  As to the fourth element of the doctrine of issue preclusion, "the determination made of the issue in the prior action" was not "necessary and essential to the resulting judgment." *Hunter*, 300 N.W.2d at 125–26*.*  Thus, A.Y. cannot access the doctrine in this case.

either directly or to his agent—he could agree to transfer or assign the payment to A.Y. True, "[s]pendthrift protection prevents anticipation of the beneficiary's rights but does not extend beyond the point of distribution." Restatement (Third) of Trusts § 58, cmt. d (Am. L. Inst. 2003). "More particularly, the beneficiary cannot transfer [his] right to future payments from the trust, nor can the beneficiary's creditors collect future trust payments due to the beneficiary. The creditors can only collect after the trust has paid or distributed property to the beneficiary." Martin D. Begleiter, *In the Code We Trust—Some Trust Law for Iowa at Last*, 49 Drake L. Rev. 165, 209 (2001). But here, Michael revoked the authority under the LPOA to pay A.Y., and the attorney-in-fact could no longer access the trust distributions. Agreeing with A.Y., the district court found Michael could not revoke the LPOA.

Yet, in favor of Michael's argument, we note Iowa's power-of-attorney statute allows the principal to revoke a power of attorney at any time. *See* Iowa Code § 633B.110(1)(c).[6] Michael asserts he did so and A.Y. cannot force him to continue the transfer of trust benefits. Likewise, use of the word "irrevocable" in the body of the LPOA does not automatically prevent revocation of the instrument.

---

[6] Iowa Code section 633B.110(1) provides:
> A power of attorney terminates when any of the following occurs:
> a. The principal dies.
> b. The principal becomes incapacitated, if the power of attorney is not durable.
> c. The principal revokes the power of attorney.
> d. The power of attorney provides that it terminates.
> e. The purpose of the power of attorney is accomplished.
> f. The principal revokes the agent's authority or the agent dies, becomes incapacitated, or resigns, and the power of attorney does not provide for another agent to act under the power of attorney.

*See MacGregor v. Gardner*, 14 Iowa 326, 340-42 (1862). In *MacGregor*, the Iowa Supreme Court held a power of attorney or comparable principal-agent relationship created as part of a contract to benefit a third party, where a third party gives valid consideration in exchange, may render the power of attorney irrevocable. *See id.*; *see also Andrew v. Metro. Life Ins. Co.*, 233 N.W. 473, 475 (Iowa 1930) ("It is the general rule of law that an agency coupled with an interest cannot be terminated at the will of the principal."). In this context, the phrase "coupled with an interest" does not mean "an interest in the exercise of power, but an interest in the property on which the power is to operate." *Taylor v. Burns*, 203 U.S. 120, 125 (1906).[7]

But unlike a general power of attorney, which is revocable at the will of the principal, Michael gave the LPOA as valuable consideration in exchange for A.Y. ceasing collection activities. A.Y. characterized the LPOA as a security interest for payments from the trusts, since the trust proceeds were the only assets Michael had left to satisfy the judgment. This meets the definition of a power of attorney "given in exchange for valuable consideration" rendering the LPOA irrevocable by Michael. *See Am./Int'l 1994 Venture v. Mau*, 42 N.Y.S.3d 188, 200 (App. Div. 2016). Michael is a sophisticated businessman and admitted at trial to relying upon irrevocable letters of credit to assure that a customer would not renege on the agreement to provide monies. He understood what he was agreeing to do, and until the conditions of the automatic termination occurred, there was no provision allowing him to revoke the LPOA. A power of attorney must be strictly construed and will be held to grant only those powers specified. *See In re Est. of Crabtree*,

---

[7] None of the cases cited in this section deal specifically with a trust controlled by spendthrift clauses.

550 N.W.2d 168, 170 (Iowa 1996). Thus, under the negotiated terms of the contract between these parties, Michael agreed, in exchange for consideration, to make his LPOA irrevocable. And although section 633B.110 does not specifically reference this contingency, "[u]nless displaced by a provision of this chapter, the principles of law and equity supplement" chapter 633B. Iowa Code § 633B.121. So, we find Michael could agree to an irrevocable power of attorney as consideration under a contract. But we must still determine whether he did so under the contract at issue.

This brings us to another finding by the bankruptcy court that we find compelling. A.Y. argued that once trust income is distributed to Michael or his attorney-in-fact, the spendthrift protections of Iowa Code section 633A.2302(2) no longer apply. Thus, A.Y. postures the irrevocable LPOA would be enforceable against all trust distributions, current and future, even if protected by spendthrift clauses. By its terms, the LPOA "irrevocably" appointed the attorney-in-fact for this limited purpose of accepting the trust fund payments and forwarding them on to A.Y. to satisfy Michael's debt. The LPOA terms provided for automatic termination "upon the earliest to occur of the following: (a) the death of Michael . . . ; (b) upon the satisfaction of judgment . . . ; (c) August 31, 2032." Yet, focusing on the impact of an irrevocable LPOA on the spendthrift protections, the bankruptcy court disagreed with A.Y. and explained:

> The Court declines to consider the [power of attorney] irrevocable here. The present case is distinguishable from the cited cases because this case involves a spendthrift trust. To find the [power of attorney] irrevocable here would turn a freely given appointment of an attorney-in-fact into a virtual assignment of [Michael's] interest in a spendthrift trust. Such an assignment of

> interest would violate Iowa Code [section] 633A.2302(2). This situation is simply not contemplated in either of the cases [A.Y.] cites.
>
> Alternatively, [A.Y.] argues that [Michael's power of attorney] functions as a security agreement, securing [A.Y.'s] interest in future trust distributions. [A.Y.] argues that, because the [power of attorney] is a security agreement, [Michael] cannot revoke it until the debt underlying its security interest is repaid. [A.Y.] cites no case law to support this theory and the Court finds no precedent for it. Moreover, allowing [Michael's power of attorney] to function as a security agreement would again violate Iowa Code [section] 633A.2302(2).

*McDonald*, 586 B.R. at 41. True, under trust law and as the bankruptcy court surmised, "spendthrift restraint merely prevents the beneficiary from making an *irrevocable* transfer of his or her beneficial interest." Restatement (Third) of Trusts § 58*,* cmt. d(1). So Michael, as beneficiary of a spendthrift trust, could not irrevocably transfer or assign his trust distributions.

Where a contract affects a public interest—such as here, allowing a donor to restrict access of the beneficiary to spendthrift trust proceeds—legislation may prescribe and limit the "contract even to the extent of fixing the rights of and obligations to third persons for whose benefit the contract is made." *See In re Est. of Murray*, 20 N.W.2d 49, 55–56 (Iowa 1945). Thus, even though Michael contracted to bind future distributions of trust funds, legislation specifically mandates this cannot be done with spendthrift protected funds. While not binding on us, we again agree with the bankruptcy court reasoning related to the irrevocable LPOA and the impact upon the spendthrift provision of the trust. Thus, we find Michael cannot be required to assign or transfer his spendthrift protected distributions under an irrevocable LPOA.[8]

---

[8] With this finding, we need not address Michael's counterclaim argument that A.Y. breached the Amendment by accepting monies from DB&T to release judgment liens and, thus, cancelled the consideration given for the power of attorney. A.Y.'s

**Breach of Contract.**

We still must answer if Michael breached his agreements with A.Y. and whether A.Y. can proceed with collection of the trust distributions. The answer is yes to both questions. Michael agreed to pay A.Y. the trust distributions, through an attorney-in-fact, once he received them. And Michael directly received a trust distribution of $6,218.44 in 2016 and failed to pay it to A.Y. in breach of the Agreement. He confirmed his violation of the Agreement in a signed acknowledgement. Now Michael has refused to authorize those payments to A.Y., believing that A.Y. cannot compel Michael to continue a transfer of future payments under Iowa law. *See Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010) (discussing elements and required proof to prevail on a breach of contract claim). By breaching the agreement to turn over the trust distributions once he received them, Michael opened the door for A.Y. to begin collection activities against him. The LPOA was executed in exchange for the requirement that A.Y. "cease and desist from any pending collection activities for so long as [Michael] complies with the Agreement and all amendments thereto." While we determined A.Y. cannot enforce the LPOA,

> [i]f the beneficiary of a spendthrift interest purports to transfer it to another for value but later revokes the assignment and the trustee's authority pursuant to it, the beneficiary is liable to that other person. Although that person cannot reach the beneficiary's interest under the trust, satisfaction of the claim can be obtained from other property of the beneficiary or from trust funds after they have been distributed to the beneficiary.

---

acceptance of payments from DB&T in exchange for releasing liens it held on two of Michael's properties did not constitute "collection activities" under the amended restitution agreement and, therefore, was not a material breach of the contract. We find the district court's denial of this contract claim was well reasoned.

Restatement (Third) of Trusts § 58, cmt. d(1). This is the situation here. So, A.Y. can pursue collection of trust distributions once received by Michael.

**The Injunction.**

With the conclusion that A.Y. cannot enforce an irrevocable LPOA compelling future payments from a spendthrift trust, it follows that A.Y. is not entitled to an injunction. "Permanent injunctive relief is an extraordinary remedy that is granted only when there is no other way to avoid irreparable harm to the plaintiff." *Lewis Invs., Inc. v. City of Iowa City*, 703 N.W.2d 180, 185 (Iowa 2005). It should be granted with caution and only when required to avoid irreparable damage. *Skow v. Goforth*, 618 N.W.2d 275, 277–78 (Iowa 2000). Our supreme court has emphasized, "[A] permanent injunction is a remedy that should be granted only with caution[;] an injunction is warranted when it is necessary to prevent irreparable injury to the plaintiff and when there is no other adequate remedy at law." *In re Langholz*, 887 N.W.2d 770, 779 (Iowa 2016). With the ability to proceed with collection, A.Y. cannot show irreparable injury nor can we mandate Michael to bind his spendthrift trust distributions.

**The Attorney Fee Award.**

A.Y. claims entitlement to attorney fees because Michael defaulted under the terms of the Amendment. After finding Michael breached the agreement, the district court awarded A.Y. $16,787.35 in attorney fees, plus interest. Ordinarily, an award of attorney fees is not allowed unless authorized by statute or contract. *See Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 707 (Iowa 2020). No statute applies, so we look to the terms of the contract. The terms of the Amendment are clear:

> The parties hereby agree that, as of the execution of this Amendment, any interest or attorney fees which would have otherwise accrued against [Michael] are hereby waived by [A.Y.]. Furthermore, [Michael] shall not be liable for any interest or [A.Y.'s] attorney fees *unless he defaults on the Agreement and all amendments* thereto after the date of execution of this Amendment.

(Emphasis added.)   Under these terms, Michael received the benefit of a waiver of attorney fees incurred from the previous breach of the Agreement and agreed to pay future attorney fees if he defaulted on the Agreement or the Amendment. Here, with the condition of a default satisfied, the contract terms allow for payment of attorney fees to A.Y., not to Michael.   And while Michael requests attorney fees in his brief, he did not in the district court below.   *See State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999) ("Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in trial court.").   Nor do we find the contract language allows an award of fees to Michael even if he proved a breach of contract.

Because Michael breached the terms of the Agreement, A.Y. is entitled to the reasonable attorney fees ordered.   *See Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 182 (Iowa 2010) (taxing attorney fees where agreement terms expressly authorized payment).   We affirm the award of attorney fees of $16,787.35 to A.Y.

**IV. Conclusion.**

We affirm the district court's order finding Michael in breach of the restitution agreement and awarding attorney fees to A.Y.   We also affirm the ruling that A.Y. did not breach any agreement with Michael.   We reverse the order enforcing the

LPOA and its restraint on the spendthrift trust distributions, and we reverse the grant of A.Y.'s request for a permanent injunction.

**AFFIRMED IN PART AND REVERSED IN PART.**

May, J., concurs; Mullins, P.J., dissents.

**MULLINS, Presiding Judge** (concurring in part and dissenting in part).

I concur on the part of the majority opinion that affirms the district court, and I respectfully dissent from the parts that reverse the district court.

While employed at A.Y. McDonald Industries, Inc. (A.Y.), Michael McDonald (Michael) committed "fraud while acting in a fiduciary capacity, embezzlement, or larceny." He violated the trust of A.Y. He gamed the business enterprise for his own substantial, personal gain. After avoiding criminal consequences of his actions and breaching his subsequent promise to repay over $2.5 million of ill-gotten funds, he confessed judgment for more than $1.3 million. After that, in order to stop A.Y.'s collection efforts he voluntarily, and for consideration, agreed to the arrangement outlined in the majority opinion to appoint a limited power of attorney to accept his share of spendthrift funds as they were distributed and after distribution to that agent, the agent/attorney-in-fact would pay the funds to A.Y.

Unsurprisingly, Michael breached that agreement as well by accepting funds that should have been paid to his attorney-in-fact. Thereafter, he filed for Chapter 7 bankruptcy. Because the debt to A.Y. resulted from "fraud while acting in a fiduciary capacity, embezzlement, or larceny," it was non-dischargeable. A.Y. then pursued Iowa court enforcement of the agreement, to which Michael agreed to avoid collection efforts as mentioned above.

Michael defrauded the company for which he was chief executive officer to the tune of more than $2.5 million. He later confessed judgment for more than $1.3 million that was at that time still due A.Y. After negotiating a procedure that caused A.Y. to cease collection activities, while Michael continued to dispose of assets, he then breached the agreement, filed bankruptcy, and now claims he

should not be bound by the agreement he negotiated that was supported by consideration and freely made.

The majority opinion follows a strict, and I believe narrow, reading of applicable law as applied to this unique set of facts. He gamed his company. He gamed financial systems and sound business principles. He has been deceitful at every stage and transaction in this saga. He has now gamed the courts. He should be held accountable. While justice is blind, it/we should not turn a blind eye. I do not think the law requires that. I would find the limited power of attorney procedure to which he agreed, supported by consideration, was and is legally enforceable. And such a procedure, which had the intent to result in the spendthrift trust make payments to Michael via his attorney-in-fact, with his agreed direction that the attorney-in-fact would then pay Michael's distribution to A.Y., did not violate the spendthrift provisions of the trust. *See generally* Iowa Code §§ 633A.1104, 633B.121, 633B.123; *MacGregor v. Gardner*, 14 Iowa 326 (1862)

I would affirm the order enforcing the LPOA and the grant of A.Y.'s request for a permanent injunction.